**CONSECO FINANCE SERVICING CORP. (f/k/a Green Tree Financial Servicing Corp.), Appellant,**

v.

**William WILDER; Cathy Wilder; and Southern Living Housing, Inc., Appellees.**

No. 2000–CA–000276–MR.

Court of Appeals of Kentucky.

May 18, 2001.

Linda J. West, Christopher M. Hill & Assoc., Frankfort, KY, for Appellants.

R. Gregory Lathram, Law Offices of R. Gregory Lathram, P.S.C., London, KY, for Appellee.

Before DYCHE, HUDDLESTON, and KNOPF, Judges.

KNOPF, Judge:

Conseco Finance Servicing Corporation, appeals from an order of the Bell Circuit Court denying its motion to compel arbitration in an action filed against it by William and Cathy Wilder. For the reasons discussed below, we reverse and remand.

In May 1995, the Wilders agreed to purchase a mobile home from Southern Living Housing, Inc., a North Carolina corporation with offices in Kentucky. The home had been manufactured by Gold Medal Homes, Inc., also of North Carolina.[1] The Wilders made a down payment of $15,000.00 toward the purchase price of approximately $60,000.00 and agreed to pay the balance in monthly installments pursuant to a sales contract and security agreement (the contract). As part of the financing arrangement, Southern Living assigned the contract to Green Tree Financial Servicing Corporation, Conseco's predecessor. Conseco (as apparently was Green Tree) is a Delaware corporation with its principal place of business in Minnesota. According to the Wilders, the mobile home was marred from the time of its delivery in July 1995 by both manufacturing and installation defects. The Wilders assert that they complained repeatedly to all three companies involved in the sale, but after several months and the failure of their complaints to elicit the repairs they wanted, they ceased making payments. Conseco brought suit under the contract in March

---

1. Gold Medal is not a party to the arbitration agreement and by this Court's order has been dismissed as an appellee. Southern Living did not join in the petition to compel arbitration. As a nominal party to the matter before us, Southern Living will not figure in our discussion.

1997 and soon thereafter repossessed the mobile home.

The Wilders instituted the present action in June 1999. Seeking to have the contract rescinded as well as other relief, they alleged that the three companies breached warranties and violated the Kentucky Consumer Protection Act (KRS Chapter 367). Conseco responded in relevant part by moving to compel arbitration pursuant to an arbitration clause in the contract. By order entered January 31, 2000, the trial court found the arbitration clause to be unconscionable and denied Conseco's motion. It is from that ruling that Conseco has appealed. The company contends that the trial court mischaracterized the arbitration clause and in so doing interfered with the company's rights under both the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.*) and Kentucky's version of the Uniform Arbitration Act (UAA) (KRS 417.045–240).

The contract at issue is on a three-page, preprinted, fill-in-the-blank form. In addition to a list of the parties (buyer: the Wilders, seller: Southern Living Housing, Inc., and assignee: Green Tree Financial Servicing Corporation) and an indication that the Wilders are giving a security interest in the mobile home, the first page includes details of the financing arrangements. The other terms, beginning with the make, model, and serial number of the home, appear from the bottom of page one to the middle of page three. These terms specify the Wilders' obligations to make timely payments, to maintain the home, and to keep the home insured. They include the seller's/assignee's right to repossess the home should the buyer default. And they include the arbitration provision at issue. The Wilders' initials appear at the bottom of page two, and their signatures at the end of their portion of the form [2] in the middle of page three. Immediately above their signatures appears a warning to buyers in large, bold type to read the agreement before signing it. The Wilders do not allege that they were denied an opportunity to do so.

The arbitration clause provides in its entirety as follows:

All disputes, claims or controversies arising from or relating to this Contract or the parties thereto shall be resolved by binding arbitration by one arbitrator selected by you [seller/assignee] with my [buyers'] consent. This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to all contract, tort and property disputes, will be subject to binding arbitration in accord with this Contract. The parties agree that the

---

**2.** The bottom half of page three contains Southern Living's assignment of the contract to Green Tree.

arbitrator shall have all powers provided by law, the Contract and the agreement of the parties. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

Conseco contends that this provision entitles it to demand arbitration of the Wilders' claims. In support of this contention, Conseco notes that both the United States Congress and the Kentucky General Assembly have enacted statutes to govern arbitration disputes: the Federal Arbitration Act (FAA), codified at 9 U.S.C. § 1 *et seq.*, and the Uniform Arbitration Act (UAA), codified at KRS 417.045–240. Both acts have been held to favor arbitration agreements, at least to the extent of abolishing what once was a widespread policy against them.[3] And both acts are meant to ensure that arbitration agreements are enforced according to the standards applied to other contracts.[4] To that end, both acts declare that qualifying agreements[5] are "valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract." KRS 417.050. *Cf.* 9 U.S.C. § 2. Both acts also provide for procedures whereby disputes over the existence or enforceability of an arbitration agreement may be addressed. KRS 417.060 provides in pertinent part that

(1) On application of a party showing an agreement described in KRS 417.050, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised. The court shall

---

**3.** *Southland Corporation v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Kodak Mining Company v. Carrs Fork Corporation,* Ky., 669 S.W.2d 917 (1984).

**4.** *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *Volt Information Sciences, Inc., v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *Valley Construction Company, Inc. v. Perry Host Management Company, Inc.,* Ky.App., 796 S.W.2d 365 (1990).

**5.** The federal act applies to [a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, . . .
9 U.S.C. § 2.
Kentucky's applies to [a] written agreement to submit any existing controversy to arbitration or a provision in [a] written contract to submit to arbitration any controversy thereafter arising between the parties. . . .
KRS 417.050.

order arbitration if found for the moving party; otherwise, the application shall be denied.

Finally, because an ordinary appeal at the close of litigation will not often provide an adequate remedy for the wrongful denial of a right to arbitrate, KRS 417.220 provides in pertinent part that

(1) An appeal may be taken from:

(a) An order denying an application to compel arbitration made under KRS 417.060[.] [6]

Our jurisdiction to consider an appeal from what otherwise would be an unappealable interlocutory order stems from this last provision.[7]

It may also be well to note that our review of a trial court's ruling in a KRS 417.060 proceeding is according to usual appellate standards. That is, we defer to the trial court's factual findings, upsetting them only if clearly erroneous or if unsupported by substantial evidence, but we review without deference the trial court's identification and application of legal principles. Apparently the trial court made no factual findings in this case, but based its ruling solely on the application of certain principles of contract law to the arbitration clause quoted above. Our review, accordingly, is *de novo*.

The parties do not dispute that the Wilders' contract with Conseco comes within the general provisions of both the FAA and the UAA. It is a written contract incorporating a written predispute arbitration agreement, and it "involves" interstate commerce.[8] Under either act, therefore, the clause is to be enforced and arbitration compelled unless the agreement to arbitrate did not encompass the Wilders' claims or unless it may be avoided "upon such grounds as exist at law or in equity for the revocation of *any* contract." [9] (Emphasis in original.)

■ As set out above, the Wilders' arbitration agreement with Conseco applies to "[a]ll disputes, claims or controversies arising from or relating to this Contract or the parties thereto...." The Wilders' claims against Conseco are all based on Conseco's alleged breach of duties imposed by the contract itself or by statutes—Kentucky's Consumer Protection Act, in particular—that are brought into play by virtue of the contract. The Wilders' claims, therefore, "relate to" the contract and thus are within the scope of the arbitration agreement.

Against this conclusion, the Wilders suggest, and the trial court apparently agreed, that the Consumer Protection Act (CPA) creates an overriding exception to the arbitration act. We are not persuaded, however, that the Wilders have substantiated this suggestion. To be sure, it is within the authority of the General Assembly to override in subsequent legislation the mandate of the UAA. As the Supreme Court has noted, however, in discussing the like power of Congress to override the FAA,

The burden is on the party opposing arbitration ... to show that Congress intended to preclude a waiver of judicial

---

6. *Cf. 9 U.S.C. § 16.*

7. The trial court's order does not resolve the litigation and was not declared final and appealable pursuant to CR 54.02. *Cf. Bridgestone/Firestone v. McQueen,* Ky.App., 3 S.W.3d 366 (1999) (dismissing appeal from a similar order where the contract at issue did not come within the terms of KRS 417.050).

8. *Allied–Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 273–74, 115 S.Ct. 834, 839, 130 L.Ed.2d 753 (1995) (the meaning of "involving" in the FAA is broad, "the functional equivalent of 'affecting.' ").

9. *Doctor's Associates, Inc. v. Casarotto, supra,* 517 U.S. at 686, 116 S.Ct. at 1656, 134 L.Ed.2d at 908.

remedies for the statutory rights at issue.... If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent "will be deducible from [the statute's] text or legislative history," ... or from an inherent conflict between arbitration and the statute's underlying purposes.[10]

The Wilders have not met this burden. They have referred us to no express provision of the CPA limiting the effect of the Arbitration Act, and they have advanced no reason to conclude that arbitration is inherently incompatible with the CPA's purposes. Even if the CPA did create an exception to Kentucky's Arbitration Act, moreover, that exception would have no bearing on Conseco's federally established rights, for when the FAA applies as we believe it does here,[11] it supersedes incompatible state laws.[12] We conclude therefore that the Wilders' claims come within the scope of their arbitration agreement and that arbitration is to be compelled unless, as the Wilders next assert, the agreement is not to be enforced because it is unconscionable.

■ As noted above, under the arbitration acts a dispute within the scope of an arbitration agreement is subject thereto unless the agreement may be avoided "upon such grounds as exist at law or in equity for the revocation of any contract."[13] The Wilders contend, and the trial court again agreed, that the arbitration clause at issue here is not to be enforced because it is unconscionable. The trial court's order indicates its concern that only an abuse of Conseco's superior bargaining position could have resulted in the Wilders relinquishing their constitutional right to present subsequent disputes to a jury. Although we respect the trial court's concern, we are not persuaded that the arbitration clause has been shown to be unconscionable.

■ A fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms.[14] The doctrine of unconscionability has developed as a narrow exception to this fundamental rule. The doctrine

> is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain.[15]

**10.** *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227, 107 S.Ct. 2332, 2337–38, 96 L.Ed.2d 185 (1987) (citations omitted). *See Equal Employment Opportunity Commission v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448 (6th Cir.1999) (applying these rules to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(1) (1998)).

**11.** Not only does the contract here involve interstate commerce and thus come directly within the terms of the FAA, but by its own terms the arbitration agreement "shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1." In *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 109 S.Ct.

1248, 103 L.Ed.2d 488 (1989), the Supreme Court held that choice-of-law provisions such as this one are generally to be upheld.

**12.** *Doctor's Associates, Inc. v. Casarotto, supra; Southland Corporation v. Keating, supra.*

**13.** 9 U.S.C. § 2; *cf.* KRS 417.050.

**14.** *Cline v. Allis–Chalmers Corporation*, Ky. App., 690 S.W.2d 764 (1985).

**15.** *Louisville Bear Safety Service, Inc., v. South Central Bell Telephone Company*, Ky.App., 571 S.W.2d 438, 440 (1978) (quoting *Wille v. Southwestern Bell Telephone Co.*, 219 Kan. 755, 549 P.2d 903 (1976)).

■ An unconscionable contract has been characterized as "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other."[16] Unconscionability determinations being inherently fact-sensitive, courts must address such claims on a case-by-case basis.[17]

As the Wilders point out, several courts in sister states have found arbitration agreements similar to the one before us unconscionable primarily on the asserted ground that the right to insist upon arbitration is unfairly one-sided. In *Ramirez v. Circuit City Stores, Inc.*,[18] for example, the California Court of Appeals refused to enforce an arbitration clause in what the court regarded as an adhesive employment contract because the clause required arbitration only of disputes initiated by the employee. "It is by now well-settled," the court stated,

> that an agreement that requires the weaker party to arbitrate any claims he

or she may have, but permits the stronger party to seek redress through the courts, is presumptively unconscionable.[19]

■ Citing these cases and characterizing their contract with Conseco as an adhesive consumer contract,[20] the Wilders argue that Conseco's ability under the arbitration clause to seek judicial redress of its likeliest claims while reserving the right to arbitrate any claim by the Wilders renders the clause oppressively one-sided and unconscionable.

Numerous other courts, on the other hand, have addressed the same issue and held that arbitration clauses identical or very similar to the Wilders' arbitration clause were enforceable. In *Harris v. Green Tree Financial Corporation*,[21] for example, the court discussed the distinction recognized in many jurisdictions between procedural and substantive unconscionability[22] and held that Green Tree's

---

16. *Id.* at 439 (quoting *Black's Law Dictionary*, 1694 (4th ed.1976)).

17. *Forsythe v. BancBoston Mortgage Corporation*, 135 F.3d 1069 (6th Cir.1997).

18. 90 Cal.Rptr.2d 916 (Cal.App.1999), *rev. dismissed*, 101 Cal.Rptr.2d 199, 11 P.3d 955 (Cal.2000).

19. *Id.* at 920 (citations omitted). *See also Iwen v. U.S. West Direct*, 293 Mont. 512, 977 P.2d 989 (1999); *Arnold v. United Companies Lending Corp.*, 204 W.Va. 229, 511 S.E.2d 854 (1998); *Williams v. Aetna Finance Company*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998); *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App.4th 1659, 18 Cal.Rptr.2d 563 (1993).

20. A contract of adhesion is a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it. *Patterson v. ITT Consumer Financial Corporation*, 14 Cal.App.4th 1659, 18 Cal.Rptr.2d 563, 565 (1993) (citation and internal quota-

tion marks omitted). Adhesion contracts are not *per se* improper. On the contrary, they have been credited with significantly reducing transaction costs in many situations. *See Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir.1997). Like all tools employed by humans, however, adhesion contracts are subject to abuse. Oppressive terms ancillary to the main bargain have been concealed in fine print and couched in vague or obscure language. In consumer transactions in particular, courts have been willing to scrutinize such contracts and have refused to enforce egregiously abusive ones. *Jones v. Bituminous Casualty Corporation*, Ky., 821 S.W.2d 798 (1991).

21. 183 F.3d 173 (3rd Cir.1999) (collecting cases).

22. Procedural, or "unfair surprise," unconscionability "pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language.... [It] involves, for example, 'material, risk-

arbitration clause did not fail either standard. The fact that the clause appeared single-spaced on the back of a preprinted form did not render it procedurally unconscionable. And the "fact that Green Tree retain[ed] the option to litigate some issues in court, while the Harrises must arbitrate all claims" did not render it substantively unconscionable.[23]

Even if the Wilders' contract is properly characterized as an adhesive one,[24] we agree with these latter cases that the inclusion of the arbitration clause was not abusive or unfair. The clause was not concealed or disguised within the form; its provisions are clearly stated such that purchasers of ordinary experience and education are likely to be able to understand it, at least in its general import; and its effect is not such as to alter the principal bargain in an extreme or surprising way. The Wilders do not deny, moreover, that they had an opportunity to read it. The manner of making this portion of the contract, therefore, does not provide any ground for not enforcing it.

 Nor does the substance of the clause provide such a ground. We note initially that there is no inherent reason to require that the parties have equal arbitration rights. The principal consideration sought by the Wilders—financing and the

mobile home—is sufficient to support their ancillary agreement to arbitrate disputes and to except certain claims by Conseco from the arbitration clause. The exceptions, moreover, are not unreasonable. Arbitration is meant to provide for expedited resolution of disputes, but the claims the agreement permits Conseco to litigate—basically claims asserting its security interest—may be litigated expeditiously. Such claims have come to be heavily regulated by statute,[25] allowing for streamlined procedures and effective protections for both sides. It does not strike us as unreasonable, much less oppressive, to forego arbitration of such claims.

 Nor have the Wilders substantiated their suggestion that the obligation to arbitrate is unfair because arbitration is prejudicial to their claims. Indeed, the United States Supreme Court has recently rejected a ruling by the Eleventh Circuit Court of Appeals that this very Conseco/Green Tree arbitration clause was unenforceable because it posed an undue risk that the consumer would encounter prohibitive arbitration costs and thus be denied a meaningful opportunity to vindicate her substantive rights.[26] In *Green Tree Financial Corp.–Alabama v. Randolph,* the Court ruled that any presumption to the effect that arbitration would be unduly burdensome is incompatible with the FAA.

shifting' contractual terms which are not typically expected by the party who is being asked to 'assent' to them and often appear [ ] in the boilerplate of a printed form." 183 F.3d at 181 (citations and internal quotation marks omitted). The notion of procedural unconscionability thus includes many of the concerns raised by contracts of adhesion. Substantive unconscionability "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Id.*

**23.** *Id.* at 183. *See also Stout v. J.D. Byrider,* 228 F.3d 709 (6th Cir.2000); *Green Tree Agency, Inc. v. White,* 719 So.2d 1179 (Ala.1998).

**24.** We note, however, that the Wilders have not alleged that they attempted to bargain for a different or for no arbitration clause; nor have they alleged that the principal benefit they sought from this bargain-credit to purchase a mobile home-was not reasonably available to them from other sources.

**25.** *See for example* KRS 355.9 parts five and six.

**26.** *Green Tree Financial Corp.–Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

Rather, a party resisting arbitration on this ground bears the initial burden of showing that there is a particular likelihood of prohibitive costs, just as a party resisting arbitration on the ground that the claim at issue is unsuitable for arbitration must show that Congress intended to preclude arbitration of that particular claim. The Court held that Randolph, the consumer, who had shown no more than that the arbitration clause was silent with respect to costs and other obstacles, had not met that burden.

The Wilders' contention that their arbitration clause is unfairly one-sided rests similarly on a presumption that arbitration will not afford them an adequate opportunity to vindicate their substantive claims. Under both the FAA and Kentucky's UAA, such a presumption is not a proper basis for refusing enforcement of an arbitration clause. If arbitration will afford the Wilders essentially the same opportunity to present their warranty, CPA, and other claims as would litigation, there is no reason to believe that the agreement limiting them to arbitration is unfair. Should it transpire, however, that the unspecified details of Conseco's arbitration procedure prevent or unfairly hinder the Wilders from meaningfully presenting their case, the arbitration clause consigning them to that procedure would appear in a different light. In that event, our ruling today would not preclude the Wilders from renewing their objection to the arbitration clause in circuit court on the ground that the clause had proved unconscionable in practice.[27] On the record before us, however, there is no basis for such a conclusion.

Finally, the Wilders allege as an alternative ground for affirming the trial court's order that Conseco waived its rights under the arbitration clause by pursuing its 1997 repossession action in court and by not moving to compel arbitration of the Wilders' current complaint until some three months after it had filed its initial answer. We are not persuaded that either circumstance constitutes Conseco's waiver.

As the Wilders correctly note, waiver is among those grounds on the basis of which a court may refuse to enforce an arbitration agreement.[28] Waiver is commonly defined as

a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon.[29]

A waiver may be either express or implied, although waiver will not be inferred lightly.[30] Because Conseco did not expressly waive its right to arbitrate, the issue here is whether the trial court could have inferred waiver from Conseco's actions. Unlike estoppel or laches, waiver may be found in the absence of prejudice to the party asserting it.[31] For this reason, among others, some of the courts addressing claims that an arbitration right has been waived have not required that the party asserting the claim prove that it would be prejudiced were arbitration to be

---

27. See, Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306 (6th Cir.2000).

28. St. Mary's Medical Center of Evansville, Inc., v. Disco Aluminum Products Company, Inc., 969 F.2d 585 (7th Cir.1992) (citations omitted).

29. Greathouse v. Shreve, Ky., 891 S.W.2d 387, 390 (1995) (quoting Barker v. Stearns Coal & Lumber Co., 291 Ky. 184, 163 S.W.2d 466, 470 (1942)).

30. Valley Construction Company, Inc. v. Perry Host Management Company, Inc., supra.

31. Greathouse v. Shreve, supra.

ordered.[32] The Seventh Circuit, indeed, in finding the more strictly traditional meaning of waiver applicable in these cases, has held that "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." [33]

Other courts have treated the question of "waiver" in this context as involving an amalgam of waiver, estoppel, and laches principles and have required a showing of prejudice.[34] These courts have inferred the waiver of arbitration rights where a belated assertion of such rights prejudiced the opposition, either by imposing undue delay and expense or by conferring an unfair tactical advantage such as pretrial discovery not available in arbitration.

We need not choose among these variations on the waiver standard here, for, as measured by any of them, Conseco has not waived its right to demand arbitration. Conseco's prosecution of its repossession action in court was pursuant to what we have found to be a valid provision of the arbitration agreement. The mere fact of the prosecution, therefore, cannot be construed as a waiver of that agreement. There is no indication, furthermore, that its litigation of that matter was for the purpose of gaining or had the effect of conferring any tactical advantage with respect to the Wilders' subsequent complaint.

Nor, in these circumstances, is Conseco's three-month delay in bringing its motion to compel so inconsistent with an assertion of its arbitration rights as to raise a presumption of waiver. The delay itself was not unduly long, and during those three months there was little activity in the case. No pleadings were filed except Gold Medal's answer to the complaint, no hearings conducted, no discovery undertaken. The Wilders have failed, furthermore, to show that they will have been prejudiced in any way if their agreement to arbitrate is now enforced.

For these reasons and those discussed above, we believe the trial court erred by denying Conseco's motion to compel arbitration. Accordingly, we reverse the January 31, 2000, order of the Bell Circuit Court and remand for new proceedings consistent with this opinion.

ALL CONCUR.

---

**32.** *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Company, Inc., supra; WorldSource Coil Coating, Inc. v. McGraw Construction Company, Inc.,* 946 F.2d 473 (6th Cir.1991); *National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.,* 821 F.2d 772 (D.C.Cir.1987).

**33.** *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 390 (7th Cir. 1995).

**34.** *S & R Company of Kingston v. Latona Trucking, Inc.,* 159 F.3d 80 (2nd Cir.1998); *S & H Contractors, Inc. v. A.J. Taft Coal Company, Inc.,* 906 F.2d 1507 (11th Cir.1990); *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 817 F.2d 250 (4th Cir.1987); *Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.,* 781 F.2d 494 (5th Cir.1986).