MAZE, JUDGE:
Genesis Healthcare, LLC, and affiliated entities (Genesis) appeals from an order of the McCracken Circuit Court denying its motion to compel arbitration of claims brought by Mable Stevens, as Executrix of the Estate of Reba Kathryn Price. Genesis argues that the trial court erred in finding the arbitration agreement to be unenforceable due to the unavailability of the designated arbitrator. We conclude that the trial court erred by addressing this issue without considering whether Stevens had the authority to execute the arbitration agreement on Price's behalf. However, we further conclude that the power of attorney did not authorize Stevens to execute an arbitration agreement. Since there was no valid arbitration agreement, the trial court properly denied Genesis's motion to compel arbitration. Hence, we affirm the trial court's order and remand for additional proceedings on the merits of the case.
The relevant facts of this case are not in dispute. On April 1, 2010, Reba Price was admitted as a resident of Paducah Care & Rehabilitation Center, which is owned and operated by Genesis and affiliated entities. Price remained a resident there until her death in 2015.[1] Prior to her admission, Price executed a durable power of attorney (POA) appointing her sister, Mable Stevens, as her attorney-in-fact. Price's POA granted Stevens:
full power for me and in my name and stead to make contracts, lease, sell, convey or mortgage any real or personal property that I may now or hereafter own and to execute bills of sale and to execute and acknowledge on my behalf any mortgages, bills of sale, and general warranty deeds, upon such terms and conditions that my attorney-in-fact deems advisable, and any sale of my real estate may be either public sale or private sale, in the discretion of such attorney-in-fact, that is necessary to carry out the power herein given; to receive and receipt for any money which may now or hereafter be due me; to retain or release all liens on real or personal property belonging to me; to draw, make, endorse and sign any and all checks on my account of any bank for *648 me and to pay all of my current bills and write and sign all necessary checks in connection therewith; to invest and reinvest my money for me; and generally to do and perform for me and in my name, all that I might do if present.
The rights under this Power of Attorney specifically include, among others, the right to sell, assign, transfer and make gifts of securities, and to execute and deliver all instruments, deeds and contracts. The rights also specifically entitle the attorney-in-fact to make all necessary decisions and sign all necessary documents regarding any health care decisions to be made for me, including but not limited to medical treatment and long-term care.
During the admissions process, Stevens, as POA, signed all of the admissions documents on Price's behalf. The admission documents included a document styled, "Long Term Care Arbitration Agreement" (the Agreement). The Agreement provided for binding arbitration of "[a]ny and all claims or controversies arising out of or in any way relating to this Agreement ..." (Emphasis in original). The Agreement explained that the parties agreed that they were "giving up and waiving their right to have any dispute decided in a court of law before a judge and/or jury." However, the resident was permitted to cancel the Agreement upon thirty days' notice, but any acts occurring prior to the cancellation date would still be subject to arbitration. In addition, the Agreement specified that any arbitration would be subject to the National Arbitration Forum's (NAF) Code of Procedure.
On March 25, 2014, the McCracken District Court appointed Stevens as Price's guardian. Shortly thereafter, Stevens filed this action, claiming damages for personal injury, including violations of the long-term care resident's rights statute, KRS 2 216.515, caused by negligent care to Price. Genesis filed a motion to compel arbitration under the terms of the Agreement. Stevens asserted two grounds against enforcement of the Agreement. First, Stevens argued that the POA did not authorize her to enter into an arbitration agreement. And second, Stevens argued that the Agreement was impossible to perform because it explicitly mandated arbitration by the NAF, but the NAF no longer conducts consumer arbitration.[3]
Addressing only the latter issue, the trial court determined that the application of the NAF's Code of Procedure is an integral term of the Agreement. The court also noted that Genesis failed to submit any evidence showing that another arbitrator would be willing or able to use those rules. Given these circumstances, the trial court concluded that the Agreement is now impossible to perform, and is therefore unenforceable. Consequently, the trial court denied the motion to compel arbitration.
Genesis now appeals from the trial court's order denying its motion to compel arbitration. Ordinarily, such orders are interlocutory and are not immediately appealable.
*649 However, an order denying a motion to compel arbitration is immediately appealable. KRS 417.220(1). See also Conseco Finance Servicing Corp. v. Wilder , 47 S.W.3d 335, 340 (Ky. App. 2001). The enforcement and effect of an arbitration agreement is governed by the Kentucky Uniform Arbitration Act (KUAA), KRS 417.045 et seq., and the Federal Arbitration Act, (FAA) 9 U.S.C. 4 §§ 1 et seq. "Both Acts evince a legislative policy favoring arbitration agreements, or at least shielding them from disfavor." Ping v. Beverly Enterprises, Inc. , 376 S.W.3d 581, 588 (Ky. 2012).
But under both Acts, a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate. Id. at 589. That question is controlled by state law rules of contract formation. Id. at 590. The FAA does not preempt state law contract principles, including matters concerning the authority of an agent to enter into a contract and which parties may be bound by that contract. Arthur Andersen LLP v. Carlisle , 556 U.S. 624, 630-31, 129 S.Ct. 1896, 1902, 173 L.Ed. 2d 832 (2009). Since this matter is entirely an issue of law, our standard of review is de novo. Conseco , 47 S.W.3d at 340.
Genesis first argues that the trial court erred by holding the Agreement to be unenforceable based upon its designation of the NAF as arbitrator. Under § 2 of the FAA, there are two types of challenges to the validity of an arbitration agreement. One challenges the validity of the agreement to arbitrate, while the other challenges the contract as a whole, either on a ground that directly affects the entire agreement, or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. Rent-A-Center, West, Inc. v. Jackson , 561 U.S. 63, 70, 130 S.Ct. 2772, 2778, 177 L.Ed. 2d 403 (2010), citing Buckeye Check Cashing, Inc. v. Cardegna , 546 U.S. 440 444, 126 S.Ct. 1204, 1208, 163 L.Ed.2d 1038 (2006). Only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable. The second class of challenge is within the purview of the arbitrator. Id. See also Dixon v. Daymar Colleges Grp., LLC , 483 S.W.3d 332, 340 (Ky. 2015).
Stevens argues that because the Agreement incorporates the NAF Code and because the NAF Code can only be administered by the NAF, the arbitration agreement effectively selects the NAF as arbitrator. Thus, because the NAF is unavailable to arbitrate the dispute, the Agreement is impossible to perform. Genesis argues that this issue involves the second type of challenge discussed in Rent-A-Center . And in light of the clear language of the Agreement, Genesis asserts that any question concerning the impossibility of performance of this term can only be determined by an arbitrator.
We do not necessarily agree with Genesis that the trial court lacked the authority to address this issue. After all, the threshold question is whether the Agreement can be subject to enforcement by any arbitrator other than the NAF. But for purposes of this appeal, the more significant issue is whether the trial court should have addressed this question before considering the more fundamental issue; whether there was a valid agreement between the parties in the first place. If Stevens lacked the authority to enter into the Agreement, then any question concerning impossibility of performance would be moot. Therefore, we must address that issue first.
*650 We recognize that the trial court may have wanted to avoid this issue due to the uncertainty in Kentucky law concerning the scope of an agent's authority to enter into an arbitration agreement. In Ping v. Beverly Enterprises, Inc. , supra , the Kentucky Supreme Court addressed the scope of an agent's authority to bind her principal to an arbitration agreement. As in the current case, the daughter, Donna Ping, served as the attorney-in-fact for her mother, Mrs. Duncan. Ping , 376 S.W.3d at 586. In that role, Ping entered into an arbitration agreement on behalf of her mother with the nursing home where Mrs. Duncan was a resident. Id. When Mrs. Duncan died in the facility, Ping brought wrongful death and negligence claims on behalf of the estate. Id. The nursing home sought to compel arbitration of the claim under the terms of an arbitration agreement Ping signed on her mother's behalf upon admission to the facility.
Ultimately, the Kentucky Supreme Court refused to compel arbitration, finding that the POA did not vest Ping with authority to execute the arbitration agreement on behalf of her mother. The POA granted Ping broad authority to manage Mrs. Duncan's property and finances, and authorized Ping "to do and perform, any, all, and every act and thing whatsoever requisite and necessary to be done, to and for all intents and purposes, as I might or could do if personally present." Id. at 586. In addition, the document also authorized Ping to make medical decisions for her mother's care, including:
any and all decisions of whatever kind, nature or type regarding my medical care, and to execute any and all documents, including, but not limited to, authorizations and releases, related to medical decisions affecting me; and [t]o generally do any and every further act and thing of whatever kind, nature, or type required to be done on my behalf.
Id. at 587.
After examining the scope of authority granted in the POA, the Court concluded that the document only authorized Ping to make financial and healthcare decisions for her mother. Id. at 591. In addition, the general expressions of authority for Ping to act in these matters were to " 'every act and thing whatsoever requisite and necessary to be done,' and again to 'every further act and thing of whatever kind, nature, or type required to be done on my behalf.' " Id. at 592 (emphasis omitted). The Court interpreted this language as limiting Ping's authority to those acts which were necessary or required to give effect to the financial and health-care authority expressly created. The Court concluded that Ping's decision to sign the arbitration agreement did not fall within the scope of these powers because it was not a prerequisite for admission to the nursing home. Id.
The Kentucky Supreme Court subsequently extended the holding of Ping in Extendicare Homes, Inc. v. Whisman , 478 S.W.3d 306 (Ky. 2015). In Whisman , the Court emphasized that the power to waive fundamental rights, such as access to the courts or a right to trial by jury, must be unambiguously expressed in the POA document. Id. at 328-29. The Court expressly held that such powers will not be inferred from a broad or even comprehensive grant of authority unless the document explicitly endows the attorney-in-fact to enter into an arbitration agreement. Id. at 328-30. Of the three different POA instruments at issue in Whisman , our Supreme Court held that two of the three, the Whisman and Wellner instruments, did not contain broad enough language to empower the attorney-in-fact to execute an arbitration agreement. Id. at 326. The Court noted *651 that the third instrument, the Clark POA, contained a broad and universal delegation of authority that could only be interpreted as allowing the attorney-in-fact to enter into a pre-dispute arbitration agreement. Id. Nevertheless, the Court concluded that such authority cannot be inferred without an explicit grant of such authority. Id. at 327.
Shortly after Whisman became final, the United States Supreme Court accepted certiorari, and even more recently, overruled its central holding. Kindred Nursing Centers Ltd. P'ship v. Clark , --- U.S. ----, 137 S.Ct. 1421, 197 L.Ed.2d 806 (2017). The Court held that the "clear statement" rule adopted by the Kentucky Supreme Court fails to put arbitration agreements on an equal plane with other contracts. Although the clear-statement rule was ostensibly based upon general agency rules, the United States Supreme Court concluded that Kentucky's application of those rules singled out arbitration agreements for disfavored treatment, in violation of the FAA. Id. , 137 S.Ct. at 1427.
However, the Supreme Court recognized that its decision may not require enforcement of all of the arbitration agreements at issue. Since the Kentucky Supreme Court's reading of the Clark POA was based solely on the clear-statement rule, the United States Supreme Court found that the state court erred by refusing to compel enforcement that the arbitration agreement executed pursuant to that POA. However, the United States Supreme Court remanded on the Wellner POA, stating that, if the Kentucky court's interpretation of the POA was "wholly independent of the court's clear-statement rule, then nothing we have said disturbs it. But if that rule at all influenced the construction of the Wellner power of attorney, then the court must evaluate the document's meaning anew." Id. , 137 S.Ct. at 1429.
Although this ultimate question remains to be resolved, the parties to the current appeal agree that Ping remains applicable to interpret the POA at issue. Genesis focuses on the broad language in the POA in which Price granted Stevens the authority "to make contracts," "to execute and deliver all instruments, deeds and contracts," and "to generally do and perform for me and in my name, all that I might do if present." Genesis interprets this language as authorizing Stevens to enter into any contract, including the Agreement at issue here. But in Ping , our Supreme Court explained that an agent's authority under a power of attorney is to be construed with reference to the types of transaction expressly authorized in the document and subject always to the agent's duty to act with the utmost good faith. Ping , 376 S.W.3d at 592, citing Wabner v. Black , 7 S.W.3d 379, 381 (1999), and Restatement (Second) of Agency , § 37 (1958). Consequently, general expressions of authority must be construed in furtherance of the specific powers granted by the POA. Id. at 592-93.
As in Ping , the POA in this case specifically authorized Stevens to act on Price's behalf in matters involving financial and healthcare decisions. The Court in Ping expressly held that the execution of an optional arbitration agreement does not fall within either category. Id. at 593-94. Furthermore, the POA does not grant Stevens the authority to institute or defend actions, or to settle dispute's on Price's behalf, or any other language from which we may reasonably infer that Price authorized Stevens to enter into an optional arbitration agreement. Therefore, we must conclude that Stevens did not have the authority to enter into the Agreement on Price's behalf. For this reason, the trial court properly denied Genesis's motion to compel arbitration. Since there was no valid *652 agreement, we need not consider whether the designation of the NAF makes the Agreement impossible to perform.
Accordingly, we affirm the order of the McCracken Circuit Court denying the motion to compel arbitration, and we remand this matter for further proceedings on the merits of the complaint.
ALL CONCUR.

Price passed away on December 26, 2015, which was after the filing of briefs in this appeal. Stevens was appointed as executrix of Price's estate. Thereafter, on October 25, 2016, this Court granted Stevens's motion to substitute the Estate as a party to the appeal.

The NAF is headquartered in Minneapolis, Minnesota. In July 2009, the Minnesota Attorney General filed a complaint against the NAF and related entities alleging violations of state consumer-protection laws. The complaint sought civil penalties as well as an injunction barring the NAF from engaging in those practices of the organization that allegedly violated the relevant statutes. On July 17, 2009, the parties entered into a consent judgment under which the NAF agreed that it would not administer, process, or "[i]n any manner participate in" any consumer arbitration filed on or after July 24, 2009. Miller v. GGNSC Atlanta, LLC , 323 Ga.App. 114, 116, 746 S.E.2d 680, 683 (2013).