RENDERED:  DECEMBER 4, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0117-MR

PROVIDENCE HEALTHCARE OF
PINE MEADOWS, LLC A/K/A PINE
MEADOWSIDENCE OPCO, LLC;
MARK MILLET, IN HIS CAPACITY
AS ADMINISTRATOR OF
PROVIDENCE PINE MEADOWS;
PROVIDENCE ADMINISTRATIVE
CONSULTING SERVICES, INC.;
PROVIDENCE GROUP
MANAGEMENT COMPANY, LLC;
PROVIDENCE GROUP OF
KENTUCKY, LLC; AND
PROVIDENCE GROUP, INC.                                              APPELLANTS


                        APPEAL FROM FAYETTE CIRCUIT COURT
v.               HONORABLE ERNESTO M. SCORSONE, JUDGE
                        ACTION NO. 19-CI-02130


KEITH ROARK, AS
ADMINISTRATOR OF THE ESTATE
OF EDD ROARK, DECEASED                                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, MCNEILL, AND L. THOMPSON, JUDGES.

GOODWINE, JUDGE:  Appellants (collectively referred to as "Pine Meadows")

appeal from an order of the Fayette Circuit Court denying Pine Meadows' motion

to compel arbitration of claims brought by Keith Roark ("Keith") as the

administrator of the estate of Edd Roark ("Edd").  After careful review, finding no

error, we affirm.

Pine Meadows is a nursing facility in Lexington.  About three months

prior to Edd's admittance to Pine Meadows, on January 24, 2017, he executed a

"General Power of Attorney" appointing Keith as attorney-in-fact to make

decisions on his behalf, including "any personal matter, medical decision, business

transaction and all other matters not specifically prohibited" by the document.

Record ("R.") at 125.

On April 21, 2017, Edd was admitted to Pine Meadows.  As part of

the admissions process, Keith executed several documents on Edd's behalf.  One

of the documents Keith signed was a voluntary arbitration agreement.  Although

Keith signed the agreement, on the line for Keith Roark to designate the capacity in

which he was acting, he wrote "Keith Roark."  Pertinent to this appeal, Keith did

not indicate on this form that he signed in his capacity as Edd's attorney-in-fact,

despite the form giving him that option.  R. at 130.

Edd died on January 9, 2018.  Keith was appointed the administrator

of Edd's estate.  On June 7, 2019, he filed this action against Pine Meadows.  In

the complaint, Keith alleged negligence, medical negligence, corporate negligence, and wrongful death against Pine Meadows. Pine Meadows filed an answer and later filed a motion to compel arbitration based on the arbitration agreement. The trial court heard the matter on September 13, 2019 and denied the motion by order entered December 23, 2019.

The trial court held Keith "did not sign the arbitration agreement in his capacity as his father's power of attorney, and as such, he did not have the authority to bind his father to the arbitration agreement." R. at 213. The trial court noted Keith signed his name above two lines, one for "Signature of Legal Representative for Healthcare Decisions" and one for "Signature of Legal Representative for Financial Decisions." *Id.* The trial court found that "even if Keith Roark was Edd Roark's legal representative for healthcare and financial decisions pursuant to *Ping v. Beverly Enterprises*, 376 S.W.3d 581 (Ky. 2012), the signing of a voluntary, pre-dispute arbitration agreement is neither a healthcare decision nor a financial decision." *Id.*

On appeal, Pine Meadows argues there is no case law supporting the trial court's hyper-technical conclusion that the arbitration agreement was invalid because Keith failed to write that he acted as Edd's attorney-in-fact in signing the agreement. In response, Keith argues the trial court correctly concluded he did not

have the authority to bind Edd to the arbitration agreement because he did not sign the agreement as attorney-in-fact.

We apply the following standard of review in reaching our decision:

In reviewing an order denying enforcement of an arbitration clause or agreement, we apply a two-fold standard of review. *See* KRS[1] 417.220(2) ("The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action."). First, we examine the trial court's findings of fact. *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 340 (Ky. App. 2001). Those factual findings are reviewed under the clearly erroneous standard and are deemed conclusive if they are supported by substantial evidence. *Id.* Second, we review the circuit court's legal conclusions *de novo* to determine if the law was properly applied to the facts. *Id.*

*Padgett v. Steinbrecher*, 355 S.W.3d 457, 459 (Ky. App. 2011); *Frankfort Medical Inv'rs, LLC v. Thomas by and Through Thomas*, 577 S.W.3d 484, 487 (Ky. App. 2019).

It is well-established that both the Kentucky Uniform Arbitration Act, KRS 417.045 *et seq.* and the Federal Arbitration Act "evince a legislative policy favoring arbitration agreements, or at least shielding them from disfavor." *Ping*, 376 S.W.3d at 588. Furthermore, "a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate. . . . Unless the parties clearly and unmistakably manifest a contrary intent . . . existence

---

[1] Kentucky Revised Statutes.

-4-

of the agreement depends on state law rules of contract formation." *Id.* at 590 (citations omitted).

Although the parties claim to disagree regarding the existence of several factual disputes, the key disputed issues are whether the trial court correctly interpreted Keith's omission of his title of "POA" on the signature line of the arbitration agreement and whether any other documents in the record support a finding that Keith signed the agreement as Edd's POA. Based on our review, the trial court's factual findings are supported by the record. Although Keith was clearly Edd's POA and he signed other admissions documents as such, he either chose to omit or mistakenly omitted "POA" from the title or relationship line on the signature page of the agreement. Pine Meadows argues these other documents are evidence that Keith signed in his capacity as POA, but presented no evidence supporting its contention.

Pine Meadows drafted the arbitration agreement. There are two glaring omissions on the arbitration agreement. First, on page 1 of the agreement, the line after "legal representative of" is left blank. Second, on the line below the signature on page 6 of the form, Pine Meadows lists four different capacities for a signatory to choose from, including Power of Attorney. Keith chose neither. To its detriment, Pine Meadows did not request Keith clarify his role. As such, we

conclude the trial court's factual findings are supported by substantial evidence and are not clearly erroneous.

Next, we address whether the trial court properly applied the law to the facts in this case. The only opinion directly addressing this issue is unpublished, but its holding is supported by analogous Kentucky contract law precedent. In *Kindred Nursing Centers Ltd. Partnership v. Butler*, No. 2013-CA-000880-MR, 2014 WL 3722083 (Ky. App. Jul. 25, 2014), the son was appointed as his mother's attorney-in-fact prior to her admission to a nursing facility. *Id.* at *1. As part of the admissions process, the son executed several documents on his mother's behalf, including an arbitration agreement. *Id.* He "signed the arbitration agreement in his capacity as 'son' and did not indicate on the form his status as attorney-in-fact." *Id.* The arbitration agreement in *Butler* had three signature lines: (1) "Print Name of Resident"; (2) "Signature of Legal Representative"; and (3) "Legal Representative Printed Name and Capacity." *Id.* at *4. The third line included a list of capacities to choose from "guardian, durable power of attorney, spouse, son, daughter, etc." This Court held the arbitration agreement was invalid because it was signed as "son" without indicating the son's capacity as attorney-in-fact. *Id.* at *6. This Court noted it was also questionable as to whether the nursing facility's authorized agent properly signed the agreement, but nonetheless concluded that the signature as "son" was the basis for its holding. *Id.*

*Butler* relied on analogous precedent highlighting the importance of indicating one's representative capacity when signing a written agreement: *Kennedy v. Joy Manufacturing Co.*, 707 S.W.2d 362 (Ky. App. 1986) and *Enzweiler v. Peoples Deposit Bank of Burlington*, 742 S.W.2d 569 (Ky. App. 1987). In *Kennedy*, the vice president of a company signed a guaranty agreement for a corporate debt. *Kennedy*, 707 S.W.2d at 363. Kennedy argued he intended to sign the agreement only in his representative capacity and that he intended "the words 'as Vice-president of the Marrick Company or, the Marrick Company by Walter Kennedy, Vice-President'" be typed in by Joy Manufacturing. *Id.* However, those words were never added to the agreement. *Id.* This Court held that Kennedy was personally liable for his company's debts because "Kennedy did not sign in his representative capacity and nothing in the record supports his allegations as to the parties' supposed intent." *Id.* at 364. In *Enzweiler*, this Court explained that "[t]he *Kennedy* decision did not hold that parol evidence would be considered to disestablish an agent's personal liability where only the agent's name appears on the instrument." *Enzweiler*, 742 S.W.2d at 571.

Here, Keith signed his name on four lines: (1) "Signature of Legal Representative for Healthcare Decisions"; (2) "Print Name and Relationship or Title (Guardian, Conservator, Power of Attorney, Proxy)"; (3) "Signature of Legal Representative for Financial Decisions"; and (4) Print Name and Relationship or

Title (Guardian, Conservator, Power of Attorney, Proxy)." R. at 130. The words on the signature lines in this case and *Butler* are nearly identical. Keith did not write his title or relationship on the second or fourth line and instead signed his name. Pine Meadows argues that because Keith did not sign as "son," there is no evidence that he signed in any capacity other than "Legal Representative." Appellants' Brief at 17.

We disagree with Pine Meadows' argument. The arbitration agreement drafted by Pine Meadows clearly intended for the signatory to write his title or relationship to the resident on the relevant signature lines. Keith signed other documents as Edd's POA, and Pine Meadows could have requested Keith sign the arbitration agreement in that capacity. *Kennedy* supports the trial court's decision that the omission of Keith's capacity as POA on the relevant signature lines means that he acted as "Keith Roark" and not Edd's POA in signing the agreement. R. at 213. As such, we hold Pine Meadows failed to establish its burden of establishing the existence of a valid arbitration agreement under Kentucky contract law.

Finally, Pine Meadows argues public policy favors enforcement of this arbitration agreement. Although the Federal Arbitration Act and Kentucky Uniform Arbitration Act generally favor arbitration agreements as a means of dispute resolution, Pine Meadows failed to establish the existence of a valid

arbitration agreement under Kentucky contract law principles. *Ping*, 376 S.W.3d at 588. As such, general public policy does not overcome the requirement under Kentucky contract law that an agent must denote his representative capacity to bind the principal to a contact.

For the foregoing reasons, we affirm the order of the Fayette Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANTS:          BRIEF FOR APPELLEE:

Tiara B. Shoter                 Hannah R. Jamison
Louisville, Kentucky            Lexington, Kentucky