RENDERED: AUGUST 5, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0051-MR

CV LOUISVILLE OPCO I, LLC D/B/A
OR A/K/A SYCAMORE HEIGHTS
HEALTH AND REHABILITATION;
THE PORTOPICCOLO GROUP, LLC;
THOMAS RAWLINS IN HIS
CAPACITY AS ADMINISTRATOR
OF SYCAMORE HEIGHTS HEALTH
AND REHABILITATION; AND
ULTRACARE MANAGEMENT
GROUP, LLC                                                          APPELLANTS


                        APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
                        ACTION NO. 20-CI-004497


SHEILA DOUGLAS AS
ADMINISTRATRIX OF THE ESTATE
OF LARRY DOUGLAS                                                    APPELLEE


                                OPINION
            AFFIRMING IN PART, REVERSING IN PART,
                          AND REMANDING

                        ** ** ** ** **

BEFORE: ACREE, CETRULO, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  CV Louisville Opco I, LLC d/b/a or a/k/a Sycamore Heights Health and Rehabilitation; the Portopiccolo Group, LLC; Thomas Rawlins in his capacity as Administrator of Sycamore Heights Health and Rehabilitation; and Ultracare Management Group, LLC (collectively referred to as Sycamore) bring this appeal from an Order entered December 14, 2020, by the Jefferson Circuit Court denying their motion to compel arbitration of negligence and wrongful death claims brought by Sheila Douglas as the Administratrix of the Estate of Larry Douglas (herein referred to as the resident or decedent) on behalf of beneficiaries of the decedent against Sycamore (a nursing home).  As will be discussed, Douglas entered into an arbitration agreement in her role as attorney-in-fact under a power of attorney (POA) as part of a larger Admissions Agreement to ensure the resident's care at Sycamore.  For the reasons stated herein, we affirm in part, reverse in part, and remand for proceedings consistent with this Opinion.

BACKGROUND

In 2019, Larry Douglas appointed his sister, Sheila Douglas, as his lawful attorney-in-fact pursuant to an executed power of attorney, which is not in dispute in this appeal.  In February of 2019, Sheila executed the Admissions Agreement on Larry's behalf for his admission to Sycamore's facility.  Larry was treated at the facility between February 1, 2019, and May 29, 2019.  Larry died on June 4, 2019.  Thereafter, Douglas filed an action in Jefferson Circuit Court on

August 3, 2020, as administratrix of the Estate, asserting negligence and wrongful

death claims against Sycamore.  The circuit court denied Sycamore's motion to

compel arbitration by order entered December 14, 2020.  This appeal followed.

## STANDARD OF REVIEW

The standard of review for this Court of an order below denying a

motion to compel arbitration can be summarized as follows:

> Ordinarily, such orders are interlocutory and are not immediately appealable.  However, an order denying a motion to compel arbitration is immediately appealable. [Kentucky Revised Statutes] KRS 417.220(1).  *See also Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 340 (Ky. App. 2001).  The enforcement and effect of an arbitration agreement is governed by the Kentucky Uniform Arbitration Act (KUAA), KRS 417.045 *et seq.*, and the Federal Arbitration Act, (FAA) 9 U.S.C.4 §§ 1 *et seq.*  "Both Acts evince a legislative policy favoring arbitration agreements, or at least shielding them from disfavor." *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 588 (Ky. 2012).

> But under both Acts, a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate. *Id.* at 589. That question is controlled by state law rules of contract formation. *Id.* at 590.  The FAA does not preempt state law contract principles, including matters concerning the authority of an agent to enter into a contract and which parties may be bound by that contract.  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31, 129 S. Ct. 1896, 1902, 173 L. Ed. 2d 832 (2009).  Since this matter is entirely an issue of law, our standard of review is *de novo.  Conseco*, 47 S.W.3d at 340.

*Genesis Healthcare, LLC v. Stevens*, 544 S.W.3d 645, 648-49 (Ky. App. 2017).

-3-

The circuit court, in denying Sycamore's motion to compel arbitration, found that Douglas signed the Admissions Agreement, which contained the arbitration agreement, only in her representative capacity. The court also found that the arbitration agreement was unconscionable. Although the circuit court did not cite any authority in support of its decision, we agree that Douglas signed only in her representative capacity as attorney-in-fact and affirm in that regard. However, as concerns the conscionability of the arbitration agreement, for the reasons stated, we conclude the arbitration agreement was not unconscionable. Further facts will be developed as necessary.

ANALYSIS

The Admissions Agreement presented to Douglas upon the decedent's admission to Sycamore is an eleven-page document, excluding the signature pages. It is divided into ten sections and various subsections within. Several sections and/or subsections within the Admissions Agreement contain lines for a signature or initials of either the Resident or the Resident's Sponsor. Douglas signed or initialed each item as "Sponsor." Section 4 of the Admissions Agreement defines "Sponsor," in relevant part, as:

> [A] person legally responsible for the Resident or must be in the process of obtaining such status, including a guardian, a person holding a durable power of attorney and/or a conservator. The Facility must receive written documentation from the person who will act as the Sponsor showing the legal right to act on behalf of the

Resident and the date on which the person was appointed by a court and/or the Resident.

The arbitration agreement is found in Section 10(G), of the Admissions Agreement, entitled "Disputes," and does not have an accompanying line for signatures or initials as found in other sections and/or subsections. Section 10 contains the final substantive provisions of the Admissions Agreement. Following Section 10 is a separate signature page for the Admissions Agreement. Appearing at the top of the signature page is the following:

> THE UNDERSIGNED ACKNOWLEDGE THAT
> EACH OF THEM HAVE READ AND UNDERSTOOD
> THIS AGREEMENT, INCLUDING THE
> ARBITRATION PROVISION IN SECTION 10.G. AND
> HAS RECEIVED A COPY OF THIS AGREEMENT,
> AND THAT EACH OF THEM VOLUNTARILY
> CONSENTS TO AND ACCEPTS ALL OF ITS
> TERMS[.]

Douglas signed her name on the line below that says "(Resident (individual or by legal representative)[)]." However, below that is a section for the Sponsor to sign. It has a similar statement preceding the signature line that appears in all caps and boldface type and reads:

> **SPONSOR MUST COMPLETE AND SIGN BELOW**
> **AS ACKNOWLEDGMENT OF HIS/HER HAVING**
> **READ AND FULLY UNDERSTOOD, AND**
> **AGREED TO THE PERSONAL UNDERTAKINGS**
> **OF THE SPONSOR, AS PROVIDED FOR IN THE**
> **AGREEMENT[.]**

Douglas printed her name, provided her signature, and on the "Relation" line wrote "Sister/POA." Notably, there is no dispute over Douglas's role as attorney-in-fact, and whether, as such, she had the authority to sign the Admissions Agreement which included the arbitration agreement. However, "Sister" does not in any way comport with the nursing home's definition of a Sponsor in Section 4 of the Admissions Agreement. Douglas's role as "Sister" would not provide the necessary authority to sponsor the decedent for admission. Only her role as attorney-in-fact under the POA does that. Accordingly, this language in the agreement is not sufficient to bind Douglas individually to the arbitration provisions including her personal wrongful death claim. We can find no definitive statement that Douglas was signing in her individual capacity.

The arbitration agreement in Section 10(G) reads as follows:

> **Disputes**. (i) To the fullest extent allowed by law, Resident and/or the Resident's legally authorized representative who signs this Agreement, on behalf of the Resident, the Resident's heirs, assigns, and all others acting or purporting to act for the Resident or the Resident's estate, and Facility agree that **all civil claims arising in any way out of this Agreement or the nursing care that Facility, its employees, or agents provide to Resident**, other than claims by the Facility to collect unpaid bills for services rendered, or to involuntarily discharge the Resident, **shall be resolved exclusively through mandatory mediation, and, if such mediation does not resolve the dispute, through binding arbitration using the commercial mediation**

**and arbitration rules and procedures of JAMS/Endispute.** JAMS shall hold such mediation and, if needed, such arbitration in its office located closest to the Facility. If any mediator, arbitrator, or court of competent jurisdiction finds any portion of this Section unenforceable for any reason, then they shall delete those unenforceable provisions and enforce the remaining provisions. Except as stated in this paragraph, JAMS/Endispute's commercial mediation and arbitration rules shall apply to any mediation or arbitration[;] (ii) Resident and Facility also agree that, **to the greatest extent allowed by law, both Resident and Facility shall seek only actual damages in any such mediation or arbitration, and that neither of them will pursue any claim for punitive damages, treble damages or any other type of damages the purpose of which are to punish one party in an amount greater than the actual damages allegedly caused by the other party**; (iii) If circumstances justifying a temporary restraining order or a preliminary injunction exist, then either party may seek such a temporary restraining order and/or such a preliminary injunction from any court with jurisdiction over the dispute. After the court rules on such motion for temporary restraining order or preliminary injunction, however, the parties will then engage in the mediation and, if necessary, arbitration, detailed in paragraphs A and B of this Section above; [and] (iv) Resident, Resident's authorized representative, and Facility all agree that they have read this section, that they understand all of its provisions, and that they agree to all of the provisions detailed in this Section[.]

Despite the language purporting to bind the decedent's "heirs, assigns, and others acting or purporting to act for the Resident or the Resident's estate," it is well-settled law in Kentucky that a decedent cannot bind wrongful death claimants to an arbitration agreement. "[T]he decedent whose death becomes the

basis of a wrongful death claim had no authority during his lifetime, *directly or through the actions of his attorney-in-fact*, to prospectively bind the beneficiaries of the wrongful death claim to an arbitration agreement." *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 313 (Ky. 2015), *judgment rev'd in part, vacated in part sub nom. Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, (2017) (emphasis added).[1]  Similarly, had Douglas signed the Admissions Agreement in her individual capacity, which did not occur, other than herself, she could not have bound the Estate or any other wrongful death beneficiaries to arbitrate any claims under the agreement.  *See LP Louisville East, LLC v. Patton*, 621 S.W.3d 386, 399 (Ky. 2020).  In short, Douglas, as attorney-in-fact, only possessed the authority to bind the decedent to the arbitration agreement.  *See id.* at 394.  Although she indicated in the agreement that her relation was "Sister/POA," the relationship of "Sister" would not create any personal liability for Douglas under the Admissions Agreement, including Section 4 regarding sponsors.  We therefore affirm the circuit court in that regard.

The circuit court also found that the arbitration agreement is unconscionable, concluding that it "is a mutual agreement in name only" because

---

[1] As this Court has noted in *Preferred Care Partners Management Group, L.P. v. Alexander*, 530 S.W.3d 919, 924 (Ky. App. 2017), KRS 411.130, Kentucky's wrongful death statute, including its predecessor statute preceded the enactment of the Federal Arbitration Act and is not antiarbitration legislation.

only the decedent gave up the right to proceed in a court of law for any disputes. The circuit court pointed to the fact that the part of the agreement binding the decedent to arbitration appears in boldface type while the language that reserves Sycamore's right to bring its actions in court does not. The court found that this "borders on fraud and certainly appears to be in bad faith." We disagree.

> A fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms. The doctrine of unconscionability has developed as a narrow exception to this fundamental rule. The doctrine is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain.
>
> An unconscionable contract has been characterized as "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." Unconscionability determinations being inherently fact-sensitive, courts must address such claims on a case-by-case basis.

*Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 334-42 (Ky. App. 2001) (footnotes omitted).

This Court, in *Conseco*, also defined the different types of unconscionability applicable to a contract dispute:

Procedural, or unfair surprise, unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language . . . . [It] involves, for example, material, risk-shifting contractual terms which are not typically expected by the party who is being asked to assent to them and often appear [ ] in the boilerplate of a printed form. The notion of procedural unconscionability thus includes many of the concerns raised by contracts of adhesion. Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent.

*Id.* at 343 n.22 (internal quotation marks and citations omitted).

In the case *sub judice*, Douglas does not claim she was misled by Sycamore. Nor does she claim that she did not read or did not have an opportunity to read the arbitration agreement. The provision itself is not hidden or obscured in fine print. Indeed, it is the only subsection within the entirety of the Admissions Agreement containing portions that are in both boldface type and underlined. It is the only section of the Admissions Agreement that mentions arbitration. We are unpersuaded by Douglas's argument using Flesch-Kincaid scores to convince this Court that the language in the arbitration agreement is incomprehensible to a person of ordinary experience and education. Douglas points to no examples in Kentucky law where Flesch-Kincaid scores have been used in contract interpretation. The language in the Arbitration Agreement is such that its general import is understandable to a person of ordinary experience and education.

-10-

Although the arbitration agreement does provide that Sycamore may use the courts for "unpaid bills for services rendered, or to involuntarily discharge the Resident," we are not persuaded that this renders the agreement unconscionable. These potential claims of Sycamore are such that they could be decided expeditiously in the courts. "The potential for uneven remedies does not render the arbitration clause unconscionable." *Hathaway v. Eckerle*, 336 S.W.3d 83, 89 (Ky. 2011). Accordingly, we reverse and remand the circuit court's finding that the arbitration agreement was unconscionable for lack of mutuality.

In summation, we conclude that the arbitration agreement is enforceable against the Estate except as concerns any wrongful death claims. And, Douglas is not personally liable under the Admissions Agreement. Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with this Opinion.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEE: |
|---|---|
| James P. Grohmann<br>A. Pete Pullen<br>Louisville, Kentucky | Matthew D. Swindle<br>Robert W. Francis<br>Little Rock, Arkansas |