RENDERED: JULY 9, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0781-MR

CURTIS GREEN AND CLAY GREEN,
INC., d/b/a GREEN'S TOYOTA OF
LEXINGTON; AND JOHN HICKS                                          APPELLANTS

v.

APPEAL FROM POWELL CIRCUIT COURT
HONORABLE KENNETH R. PROFITT, JUDGE
ACTION NO. 19-CI-00246

PHILLIP FRAZIER                                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: JONES, MAZE, AND TAYLOR, JUDGES.

JONES, JUDGE: Curtis Green and Clay Green, Inc., d/b/a Green's Toyota of

Lexington and its sales agent, John Hicks, (collectively referred to herein as

"Green's Toyota") bring this interlocutory appeal pursuant to KRS[1] 417.220(1)(a)

---

[1] Kentucky Revised Statutes.

seeking review of the Powell Circuit Court's denial of their motion to compel arbitration of claims filed against them by the Appellee, Phillip Frazier. Having reviewed the record and being otherwise sufficiently advised, we affirm the Powell Circuit Court as set forth below.

## I. BACKGROUND

On or about June 6, 2018, Frazier, who resides in Powell County, visited Green's Toyota in Lexington, Kentucky, where he purchased a 2018 Toyota Tundra pickup truck. John Hicks was the sales agent who sold the truck to Frazier. Frazier alleges that Hicks represented that the truck was a "new" vehicle with no prior damage. The truck's odometer showed it had been driven only 276 miles at the time of sale. Frazier agreed to purchase the truck for $46,205.38 plus fees and taxes for a total cash delivered price of $49,310.62. As part of the purchase, Frazier signed a one-page, motor vehicle purchase contract ("Purchase Contract"); a two-page "Applicable Contingency and Arbitration Agreement" ("Addendum"); and an acknowledgement of terms of sale form ("Acknowledgement").

The first paragraph of the Purchase Contract provides:

> The undersigned purchaser(s) . . . agrees to purchase the following described vehicle (the "Vehicle") from Green's Toyota of Lexington (the "Dealer") on the following terms and conditions and on the additional terms and conditions set forth on the reverse side of this contract, (the "Contract") which by this reference are incorporated herein.

Record ("R.") at 25.  The next section of the Purchase Contract described the

vehicle by condition (new); year (2018); make (Toyota Truck); Model (Tundra);

body style (Tundra Crew Max); color (super white); serial number

(5TFDW5F16JX732459); stock number (181873); and mileage (276).  The next

section of the Purchase Contract contained a breakdown of the total cash delivered

price; in this section, the vehicle price and the different fees and taxes were

itemized separately and then totaled.  R. at 25.

The following paragraph is contained on the first page of the Purchase

Contract, two paragraphs above the signature line:

> Purchaser has read and agreed to the terms on the reverse
> side, including the <u>ARBITRATION AGREEMENT</u>
> provided for in Paragraph 17.  Purchaser represents and
> warrants to Dealer that Purchaser is 18 years of age or
> older and has full authority to make and enter into this
> contract; and hereby acknowledges receipt of a copy of
> this contract.

R. at 25 (emphasis in original).

The backside of the Purchase Contract contains separate numbered

paragraphs.  Paragraph 17 states:[2]

> Any claim or dispute by Purchaser with Dealer arising
> out of or in any way relating to this Contract, any
> installment sale contract for the Vehicle, and any other
> agreements related to or provided herein, the Vehicle, the

---

[2] The reverse side of the Purchase Contract is extraordinarily difficult to read.  The typeface is so blurry and small that we had to use a magnifying glass to read its terms.  Despite our best efforts, however, there are a few instances where we were unable to decipher the printed text.

negotiation and financing, and the sale by Dealer to Purchaser of the Vehicle, including, without limitation any claims involving fraud or misrepresentation, personal injuries, products liability, state or federal laws or regulations, affecting or establishing the rights of consumers (without limitation truth in lending laws or regulations or consumer protection laws acts and regulations) shall be resolved by binding arbitration administered by Better Business Bureau Serving Eastern and Central Kentucky, Inc., in accordance with its rules. Dealer and/or its assignee and Purchaser shall [illegible] and deliver all agreements reasonably necessary in connection with said arbitration. All arbitration proceedings shall be held in Lexington, Fayette County, Kentucky. The decision of the arbitrator(s) shall be final, conclusive, and binding on the parties to the arbitration, and neither shall institute any suit with regard to any such claim or dispute except to compel arbitration or enforce the arbitration or enforce the arbitration decision. Venue for any action to enforce this arbitration agreement or any arbitration decision shall be in Fayette County, Lexington, Kentucky, provided Dealer or its assignee may at its option bring or institute litigation in any state or federal court, against Purchaser and the Purchaser hereby consents to the jurisdictions of any such courts and by entry of a judgment of any such court against Purchaser in favor of Dealer seeking specific performance of Purchaser's obligations hereunder, for any violation of the Purchaser's representations and warranties provided for in paragraphs 3, 10, and 11 herein and/or any [illegible] sale contract for the vehicle between Dealer and its assignee and Purchaser.[3]

R. at 26.

---

[3] Paragraphs 3, 10, and 11 relate to terms and warranties for any vehicle(s) the Purchaser agreed to trade in as part of the sale.

As part of the sale, Frazier also signed the Addendum. The first paragraph of the Addendum states:

> This Addendum is made a part of the Purchase Order dated this date between Green's Toyota of Lexington as Seller, and Phillip Frazier as Buyer/Lessor.
>
> 1. The Sales agreement of the parties for the Buyer's purchase/lease of the motor vehicle described herein is expressly contingent and conditional upon the occurrence of the following:
>
>  . . .
>
> The Seller's successful arrangement of financing for the Buyer's/Lessor's acceptance of all the terms and conditions of the financing so arranged. The Seller's agreement of the Retail Installment Contract and acceptance by a lender making supervised consumer loans/leases.

R. at 14.

> The next section of the Addendum states as follows:
>
> II. Arbitration Agreement
>
> Any claims or dispute arising out of or in any way relating to this Agreement, the negotiations, the financing, sale or lease of the vehicle which is the subject of the Agreement, including any claim involving fraud or misrepresentation, must be resolved by binding arbitration administered by the Better Business Bureau of Central and Eastern Kentucky, Inc., in accordance with its rules. All arbitration proceedings shall be held in Lexington, Kentucky. The decision of the arbitrator(s) will be final, conclusive and binding on the parties to the arbitration and no party shall institute any suit with regard to the claim or dispute except to enforce the

award. Each party shall advance its pro rata share of the costs and expenses of said arbitration proceedings and each shall separately pay its own attorney's fees and expenses. No party to this Agreement shall have the right to recover in any proceeding nor shall the arbitrators have the authority to award any party consequential or punitive damages.

R. at 14.

Lastly, Frazier signed a one-page, untitled document wherein he confirmed the terms and conditions of the sale. We refer to this document as the "Acknowledgement." The Acknowledgement's opening paragraph states:

> IT IS OUR SINCERE DESIRE TO GIVE OUR CUSTOMERS THE FINEST POSSIBLE SERVICE. IT IS ALSO OUR DESIRE TO HAVE NO MISUNDERSTANDING REGARDING ANY PART OF THIS TRANSACTION. WE THEREFORE REQUEST THAT YOU THE CUSTOMER FILL OUT THE FOLLOWING QUESTIONS BEFORE TAKING DELIVERY OF THIS AUTOMOBILE.

R. at 15 (emphasis in original).

A series of statements, numbered one through twelve, follows this introductory paragraph. The last statement, number twelve, states:

> 12. ARBITRATION. Any claim or dispute arising out of or in any way relating to this contract, the negotiations, financing, sale or lease of the vehicle which is the subject of this contract, including any clam involving fraud or misrepresentation, must be resolved by binding arbitration administered by the Better Business Bureau of Central or [sic] Eastern Kentucky, Inc., in accordance with its rules. All arbitration proceedings shall be held in Lexington, Kentucky. The

decision of the arbitrator(s) will be final, conclusive and binding on the parties to the arbitration and no party shall institute any suit with regards to any claim or dispute except to enforce the arbitration decision. Venue for any action to enforce this arbitration decision shall be in Fayette County Court, Lexington, Kentucky.

R. at 15.

After the parties completed the sales process, Frazier took delivery of the 2018 Tundra truck. On or about September 24, 2019, Frazier took the truck to Green's Toyota for routine maintenance. While there, Frazier saw another vehicle on the lot that piqued his interest. A salesman on the lot asked Frazier if he was interested in purchasing the new vehicle. Frazier indicated that he might be interested in it, and the two discussed the possibility that Frazier could trade in the 2018 Tundra truck for part of the purchase price of the other vehicle. The salesman proceeded to evaluate the 2018 Tundra truck for the purpose of determining its trade-in value.

Green's Toyota reported to Frazier that it could only offer him $31,000.00 for the trade-in despite the fact that Frazier had purchased it "new" the year prior for $49,310.62. The sales representative then told Frazier that the CARFAX report he ran revealed the 2018 Tundra truck had been wrecked prior to it being sold to Frazier, which depreciated its value. After further investigation, Frazier learned from Green's Toyota's general manager that employees at Green's Toyota had wrecked the 2018 Tundra truck on the lot before it was sold to Frazier.

Green's Toyota repaired the damage but failed to disclose this fact to Frazier instead warranting to him that the vehicle was "new."

On December 15, 2019, Frazier filed a civil complaint against Green's Toyota and Hicks in Powell Circuit Court where Frazier resides. In his complaint, Frazier alleged: (1) Green's Toyota breached its contract with Frazier by selling him a vehicle represented as "new" when in fact the vehicle was not in new condition as it had previously been wrecked by Green's Toyota; (2) Green's Toyota's actions constitute a breach of express and implied warranties as it was warranted to Frazier that he was purchasing a new vehicle with no prior damage; (3) Green's Toyota engaged in unfair, false, misleading and/or deceptive acts or practices in violation of Kentucky's Consumer Protection Act, KRS 367.170; and (4) Green's Toyota intentionally and fraudulently misrepresented that the 2018 Tundra truck was a new vehicle. Frazier sought an award of compensatory and punitive damages against Green's Toyota.

On December 24, 2019, Green's Toyota filed a motion to dismiss for lack of jurisdiction, improper venue, or in the alternative motion to dismiss and to compel and/or direct arbitration. Frazier responded to Green's Toyota's motion on or about February 18, 2020. As it relates to the arbitration provision, Frazier asserted that the purchase agreement containing the arbitration agreement was procured by fraud thereby invalidating the entire contract, including the arbitration

provision; the arbitration agreement is procedurally and substantively

unconscionable; and that Frazier's Consumer Protection Act claim falls outside of

the scope of the arbitration agreement. Green's Toyota filed a reply on February

24, 2020.

The circuit court denied Green's Toyota's motion by order entered

May 13, 2020. As related to the enforceability of the arbitration provision, the

circuit court reasoned as follows:

> [Green's Toyota] argue[s] that [Frazier's] claims herein
> are subject to a valid arbitration clause in the purchase
> agreement he signed with [Green's Toyota]. [Frazier]
> responds that the arbitration clause at issue is invalid and
> unenforceable because it was procured by fraud, that it is
> unconscionable, and that the Consumer Protection Act
> and KRS 190.071 claims are outside the scope of the
> arbitration agreement at issue. The issue of
> unconscionability of an arbitration provision in a
> Consumer Protection Act claim was directly addressed in
> *Mortgage Electronic Registration Systems, Inc., v. Abner*,
> [260 S.W.3d 351, 352 (Ky. App. 2008)]. In *Abner*, the
> Court found an arbitration clause that precluded the
> arbitrator from awarding consequential, punitive, or
> exemplary damages to be unconscionable and
> unenforceable on a Consumer Protection Act claim as it
> clearly prevents Plaintiff from meaningfully pursuing this
> statutory claim and remedy for punitive damages. [*Id*. at
> 355.] In the case at hand, the arbitration clause at issue
> prevents a plaintiff from recovering and prevents the
> arbitrator from awarding any consequential or punitive
> damages. Therefore, pursuant to the holding in *Abner*
> this Court holds the arbitration provision between the
> parties in this case to be unconscionable and
> unenforceable. Thus, [Green's Toyota's] Motion to
> Compel Arbitration is OVERRULED.

R. at 46-47.

This appeal followed.

## II. SCOPE OF REVIEW

Typically, only final judgments are appealable. Under CR[4] 54.01, "[a] final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding[.]" However, pursuant to CR 54.02(1), "[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may grant a final judgment upon one or more but less than all of the claims or parties only upon a determination that there is no just reason for delay." The circuit court's May 13, 2020 order did not fully resolve any of Frazier's claims, and it does not contain a CR 54.02 recitation.

Rather, Green's Toyota's appeal is premised on KRS 417.220(1)(a). This section allows an immediate appeal from "[a]n order denying an application to compel arbitration made under KRS 417.060[.]" *Id.* "[T]he General Assembly has, by the foregoing enactment, created a statutory interlocutory right of appeal where no such right would otherwise exist." *Cavalier Homes of Alabama v. Coleman*, 181 S.W.3d 558, 559 (Ky. 2005). Therefore, we have jurisdiction to review the circuit court's denial of Green's Toyota's motion to compel arbitration.

---

[4] Kentucky Rules of Civil Procedure.

*See Diversicare Healthcare Services, Inc. v. Estate of Hopkins ex rel. Prince*, 434 S.W.3d 70, 72 (Ky. App. 2014).

In addition to the arbitration issue, however, Green's Toyota's brief also challenges the circuit court's refusal to dismiss Frazier's action for improper venue. There is no finality exception for orders regarding venue. *Lebus v. Lebus*, 382 S.W.2d 873, 874 (Ky. 1964) ("The decision of a court that it has jurisdiction of a cause and that the venue is proper does not determine the ultimate rights of the parties, and is well recognized as an interlocutory order."). The fact that the circuit court addressed the venue issue in the same order as the arbitration issue is not sufficient to provide us with jurisdiction to review the venue issue. *See Baker v. Fields*, 543 S.W.3d 575, 578 (Ky. 2018). Our jurisdiction is confined to the circuit court's denial of Green's Toyota's motion to compel arbitration. As such, we decline to consider the venue issue as part of this appeal.[5]

### III. STANDARD OF REVIEW

"[O]ur review of a trial court's ruling in a KRS 417.060 proceeding is according to usual appellate standards." *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 340 (Ky. App. 2001). An appellate court reviews *de novo* the circuit court's application of rules governing the validity of an arbitration

---

[5] We recognize that Frazier did not argue that the venue issue is not properly before us. However, this fact is of no consequence. We have an independent duty to assess jurisdiction for ourselves. *See Wilson v. Russell*, 162 S.W.3d 911, 913 (Ky. 2005).

contract, but the court's factual findings, if any, will be disturbed only if clearly erroneous. *Frankfort Medical Inv'rs, LLC v. Thomas by and Through Thomas*, 577 S.W.3d 484, 487 (Ky. App. 2019).

### III. ANALYSIS

"[A] party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016) (citation omitted). "Questions concerning the formation of an arbitration agreement are resolved in accordance with the applicable state law governing contract formation." *Id*. (citation omitted). Because arbitration is fundamentally a matter of contract, *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67, 130 S. Ct. 2772, 2776, 177 L. Ed. 2d 403 (2010), an arbitration agreement is treated as all other contracts and if the agreement is valid, it will be enforced.

As he did before the circuit court, Frazier asserts that the arbitration agreement is not enforceable because it was procured by fraud. He explains that the Purchase Agreement and related documents were signed by him based on Green's Toyota's representations that he was purchasing a "new" vehicle, which was not the case. The fraud claim Frazier makes relates to the contract as a whole and not the arbitration clauses in particular. This is an issue for the arbitrator and

-12-

not for the Court to determine as a part of a motion to compel arbitration. *See*

*Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 856 (Ky. 2004).

> [U]nder the holding in *Louisville Peterbilt*, fraudulent
> acts inducing someone to enter into the underlying
> contract is not a basis for avoiding the arbitration clause;
> rather, to avoid the clause upon the basis of fraud, the
> fraudulent inducement must relate specifically to the
> arbitration clause.  The underlying notion is that the
> Arbitrator himself is capable of evaluating and issuing a
> ruling upon allegations relating to fraud in the
> inducement vis-à-vis the underlying contract.

*Dutschke v. Jim Russell Realtors, Inc.*, 281 S.W.3d 817, 822 (Ky. App. 2008).

We now turn to the issue of unconscionability.  "A fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms."  *Schnuerle v. Insight Communications Co., L.P.*, 376 S.W.3d 561, 575 (Ky. 2012) (quoting *Conseco*, 47 S.W.3d at 341).  "The doctrine of unconscionability has developed as a narrow exception to this fundamental rule."  *Id.*  "An unconscionable contract has been characterized as one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other."  *Conseco*, 47 S.W.3d at 342 (internal quotation marks and citations omitted).  The doctrine "is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned

-13-

bad bargain." *Schnuerle*, 376 S.W.3d at 575. "Whether a contract provision is unconscionable is 'highly fact specific.'" *Grimes v. GHSW Enterprises, LLC*, 556 S.W.3d 576, 583 (Ky. 2018) (quoting *Kegel v. Tillotson*, 297 S.W.3d 908, 913 (Ky. App. 2009)).

There are two types of unconscionability: procedural and substantive. "Procedural, or 'unfair surprise,' unconscionability 'pertains to the process by which an agreement is reached and the form of an agreement[.]'" *Schnuerle*, 376 S.W.3d at 576 (quoting *Conseco*, 47 S.W.3d at 343 n.22). "It includes, for example, the use of fine or inconspicuous print and convoluted or unclear language that may conceal or obscure a contractual term." *Energy Home, Div. of Southern Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013). "Substantive unconscionability 'refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent.'" *Valued Services of Kentucky, LLC v. Watkins*, 309 S.W.3d 256, 263 (Ky. App. 2009) (quoting *Conseco*, 47 S.W.3d at 343 n.22). Substantive unconscionability is determined by examination of "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Schnuerle*, 376 S.W.3d at 577 (quoting *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868, 876 (11th Cir. 2005)).

-14-

Relying on *Mortgage Electronic Registration Systems, Inc. v. Abner*, 260 S.W.3d 351 (Ky. App. 2008), the circuit court determined that the arbitration provision was substantively unconscionable because it limited the parties' rights to recover consequential and punitive damages. In *Abner*, we held that an arbitration provision which prevented the parties from recovering "consequential, punitive, exemplary, or treble damages" as part of the arbitration was unconscionable because it deprived the appellees of substantive remedies. *Id.* at 354-55. In so concluding, we relied on *Arnold v. United Companies Lending Corporation*, 511 S.E.2d 854, 858 (W. Va. 1998), a case involving a similar arbitration provision. In *Abner*, we interpreted *Arnold* as holding that "*an arbitration clause* that contains a substantial waiver of a parties' rights[] is unenforceable." *Abner*, 260 S.W.3d at 354 (emphasis added) (citing *Arnold*, 511 S.E.2d at 862).

In 2012, the West Virginia Supreme Court overruled the exact portion of *Arnold* we relied on in *Abner*. *Dan Ryan Builders, Inc. v. Nelson*, 291, 737 S.E.2d 550, 560 (W. Va. 2012). The court explained that *Arnold* violated the Federal Arbitration Act ("FAA") insomuch as the *Arnold* court's rule was directed solely at arbitration agreements. "Under the Federal Arbitration Act, a common-law ruling that targets arbitration provisions for disfavored treatment not applied to other contractual terms generally is preempted." *Dan Ryan Builders*, 737 S.E.2d at 560.

Our holding in *Abner* was predicated on our conclusion that an *arbitration* provision which purports to waive certain categories of damages such that it limits the parties' substantive remedies is unconscionable. As illustrated by *Dan Ryan Builders, supra*, since we decided *Abner*, the United States Supreme Court has subsequently clarified that the FAA requires courts to place arbitration agreements "on equal footing with all other contracts." *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54, 136 S. Ct. 463, 468, 193 L. Ed. 2d 365 (2015) (citation omitted). A rule that "singles out arbitration agreements for disfavored treatment" violates the FAA. *Kindred Nursing Centers Ltd. Partnership v. Clark*, __ U.S. __, __, 137 S. Ct. 1421, 1425, 197 L. Ed. 2d 806 (2017). A court may invalidate an arbitration agreement based on "generally applicable contract defenses" like fraud or unconscionability, but not on legal rules that "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 1746, 179 L. Ed. 2d 742 (2011) (citations omitted). To the extent that *Abner* created a rule that applied only to arbitration agreements, it has been superseded by recent precedent from the United States Supreme Court as well as the Supreme Court of Kentucky. *Northern Kentucky Area Development District v. Snyder*, 570 S.W.3d 531, 535 (Ky. 2018) (quoting *Kindred Nursing*, 137 S. Ct. at 1426) (recognizing and citing United States Supreme Court cases holding that FAA "displaces any

rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements.").

Therefore, instead of focusing on the fact that the limitation of damages provision appears in the arbitration clause, we must determine whether a limitation on damages provision in a consumer contract for the sale of goods, like the present, renders the contract unenforceable on the ground of unconscionability.

We begin with Kentucky's Uniform Commercial Code ("UCC"), which "applies to transactions in goods[.]" KRS 355.2-102. It provides that a buyer injured by a seller's breach of warranty may recover both incidental and consequential damages. KRS 355.2-715. However, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." KRS 355.2-719(3). This section of the UCC provides that while consequential damages for breach of warranty may be limited or excluded unless "unconscionable," such a limitation with respect to damages for personal injuries is "prima facie unconscionable." While we deal in this case only with a claim for property damages, we note that the provision at issue disclaimed liability from all consequential and punitive damages whether arising from personal injury or property damage. Additionally, even if the provision is not

*prima facie* unconscionable, it does not automatically follow that it is fair in these circumstances. *See Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 485 (Ky. App. 1978) ("Although the limitation of the buyer's remedies was not unconscionable on its face, Ford's warranty policy was unconscionable as applied to Mr. and Mrs. Mayes.").

This Court has previously upheld contracts containing limitation on damages provisions when negotiated between two commercial businesses.[6] However, we do not have two sophisticated, commercial businesses in this case. Here, we have a commercial business that used pre-printed contractual documents which were offered to Frazier, an ordinary consumer, on a take it or leave it basis. Limitation of damages provisions in consumer contracts of adhesion are not *per se* unconscionable. However, a consumer contract which seeks to exclude damages that would otherwise be available to the buyer such as those falling within Kentucky's Consumer Protection Act, must do so clearly, concisely, and noticeably such that there can be no doubt that the consumer understands the rights he is giving up by signing the contract.

---

[6] *See Carboline Co. v. Oxmoor Center*, No. 84-C-48-MR, 1985 WL 185466 (Ky. App. Apr. 5, 1985) ("Moreover, we agree with Carboline that in the sophisticated commercial setting of this transaction the provision of the parties' agreement excluding liability for consequential damages was not unconscionable."). We recognize this is an unpublished opinion. We cite to it for illustrative purposes only. *See* CR 76.28(4)(c).

The documents signed by Frazier are anything but clear regarding the limitation on damages. The documents contain three different arbitration clauses. While the clauses are similar, they are not identical. Paragraph 17 of the Purchase Contract, which is written in extraordinarily small typeface making it almost impossible to read even with the use of a magnifying glass, purports to give Green's Toyota the right to file suit in a court of law in certain instances but does not contain a clause restricting or limiting consequential or punitive damages; Section II of the Addendum, which Green's Toyota maintains embodies the parties' agreement to arbitrate, requires both parties to arbitrate their disputes and restricts the arbitrator from awarding either party consequential or punitive damages; Paragraph 12 of the Acknowledgement purports to rephrase the parties' prior agreement(s) to arbitrate but omits any reference to the limitations on damages provision contained in the Addendum as well as many of the terms set forth in Paragraph 17 of the Purchase Contract.

Taken in their totality, an examination of Green's Toyota's documents in this case leads to the conclusion that they are seriously lacking in clarity such that it is impossible for us to see how there was a clear meeting of minds with respect to the arbitration provision, and certainly not the limitations on damages provision. While arbitration was referred to throughout the documents, the provisions within the three documents are inconsistent, and in some cases almost

impossible to read. Moreover, the provision on the limitation of damages, a matter of grave importance to an ordinary consumer, is completely omitted from the summary of arbitration in the Acknowledgement checklist. When a business includes a provision limiting or excluding broad categories of damages in a contract of adhesion, like the present one, it should at least do so conspicuously and clearly.

Having concluded that the limitation of damages provision contained within the Addendum is unconscionable, we now turn to Green's Toyota's argument that we should sever the damages clause from the arbitration provision and compel the parties to arbitrate. Whether to do so is discretionary. "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." KRS 355.2-302(1).

While we recognize that some courts have simply severed the unconscionable provision from the arbitration clause, we do not believe fairness sanctions such a result in this case. The provision as contained in Green's Toyota's documents is both substantively and procedurally unconscionable. As noted above, the arbitration provision is referred to inconsistently throughout the

-20-

documents. It is impossible for us to conclude that there was a true meeting of the minds with respect to the exact terms of the arbitration. And, the Acknowledgement form completely omitted any reference to the limitation on liability, perhaps the single most important provision to a consumer.

Additionally, as observed by other courts, we do not find the limitation of damages clause to be as distinct as Green's Toyota suggests, especially where the contract does not contain a severability clause.

> The limitation of liability language is not independent of the agreement to arbitrate. These provisions are not distinct. The same contractual provision that directs arbitration limits the authority of the individual conducting that arbitration. We find the entire arbitration clause, as a whole, must fail.

*Carll v. Terminix International Co., L.P*., 793 A.2d 921, 926 (Pa. Super. 2002). *See also Nino v. Jewelry Exchange, Inc*., 609 F.3d 191, 208 (3d Cir. 2010) ("We conclude, in sum, that the arbitration agreement is procedurally and substantively unconscionable, and that the pervasively one-sided nature of the agreement forecloses any possibility of severing the unfair provisions from the remainder of the agreement."); *Dillon v. BMO Harris Bank, N.A*., 856 F.3d 330, 337 (4th Cir. 2017) ("[W]hen a party uses its superior bargaining power to extract a promise that offends public policy, courts generally opt not to redraft an agreement to enforce another promise in that contract.").

-21-

## V. CONCLUSION

For the reasons set forth above, we affirm the Powell Circuit Court.

TAYLOR, JUDGE, CONCURS.

MAZE, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

MAZE, JUDGE, DISSENTING:  While I agree with much of the reasoning of the majority opinion, I must respectfully dissent from the result in this case.  As an initial matter, I agree with the majority that the controlling issue concerns the enforceability of the various arbitration provisions in the Purchase Contract and other documents which Frazier signed.  I also agree with the majority that the trial court erred in relying on *Mortgage Electronic Registration Systems, Inc. v. Abner*, 260 S.W.3d 351 (Ky. App. 2008), because the rule in that case may not be limited solely to arbitration agreements.  Rather, as the majority points out, a court may invalidate an arbitration agreement based on "generally applicable contract defenses," but not on rules that apply only to arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 1746, 179 L. Ed. 2d 742 (2011) (citation omitted).

The majority does not address Green Toyota's argument as to the enforceability of the venue clause in the various arbitration agreements. Nevertheless, those clauses stipulate to venue in Fayette County only to enforce the arbitration agreement or any arbitration determination.  In this case, Frazier

-22-

challenges the enforceability of the arbitration agreements as a whole. As a result, the venue clauses do not affect this appeal, but they certainly have an effect on the available remedies.

I also agree with the majority that a contract provision disclaiming liability for all consequential and punitive damages is not *per se* unconscionable but may be unenforceable based on the facts of the case. But as discussed in *Genesis Healthcare, LLC v. Stevens*, 544 S.W.3d 645 (Ky. App. 2017):

> Under § 2 of the FAA, there are two types of challenges to the validity of an arbitration agreement. One challenges the validity of the agreement to arbitrate, while the other challenges the contract as a whole, either on a ground that directly affects the entire agreement, or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70, 130 S. Ct. 2772, 2778, 177 L. Ed. 2d 403 (2010), citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 444, 126 S. Ct. 1204, 1208, 163 L. Ed. 2d 1038 (2006). Only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable. The second class of challenge is within the purview of the arbitrator. *Id.* *See also Dixon v. Daymar Colleges Grp., LLC*, 483 S.W.3d 332, 340 (Ky. 2015).

*Id.* at 649.

The majority concludes that the contract's limitation on consequential and punitive damages is unconscionable and renders the entire arbitration agreement unenforceable. I believe that this type of challenge falls directly within

the second class of issues referenced in *Genesis Healthcare*. As such, it is for the arbitrator to determine whether the provision is unconscionable and, if so, whether the provision is severable or renders the entire arbitration agreement invalid. For this reason, I must dissent from the majority's result in holding the arbitration agreement unenforceable. While this is not my favored conclusion, this conclusion is compelled by the applicable authority.

Under these circumstances, I must conclude that the circuit court erred in denying Green Toyota's motion to compel arbitration. Furthermore, the venue clause in the contract would ordinarily compel that this action must have been brought in Fayette County. But in the interest of judicial economy and in light of the dispute concerning the enforceability of the arbitration agreement, I do not believe that dismissal is required in this case. Rather, I would direct the Powell Circuit Court to enter the order compelling arbitration in this case. That court has the discretion to hold this matter in abeyance pending the arbitrator's determination on the enforceability of the arbitration agreement. If the agreement is found to be enforceable, then any additional proceedings must occur in Fayette Circuit Court. Otherwise, the Powell Circuit Court would retain venue over the action.

BRIEFS FOR APPELLANT:

Carroll M. Redford
Elizabeth Woodford
Lexington, Kentucky

BRIEF FOR APPELLEE:

L. Dustin Riddle
Teddy L. Flynt
Salyersville, Kentucky