RENDERED: FEBRUARY 24, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0544-MR

MASONIC HOMES OF KENTUCKY,
INC. D/B/A MASONIC HOME OF
LOUISVILLE                                                           APPELLANT


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE OLU A. STEVENS, JUDGE
                    ACTION NO. 20-CI-004734


ANNETTE WILEY, INDIVIDUALLY
AND AS ADMINISTRATRIX AND
PERSONAL REPRESENTATIVE OF
THE ESTATE OF CHARLOTTE
BLAIR; AND MELANIE JOY
PERSSON, INDIVIDUALLY                                                 APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, McNEILL, AND TAYLOR, JUDGES.

McNEILL, JUDGE: Masonic Homes of Kentucky, Inc. d/b/a Masonic Home of

Louisville ("Masonic") appeals from the Jefferson Circuit Court's order denying

its motion to compel arbitration. After careful review, we reverse and remand.

On April 24, 2019, Charlotte Blair ("Blair") executed a durable power of attorney ("POA") appointing her daughter, Annette Wiley ("Wiley") as her agent. On December 11, 2019, Wiley was admitted to Masonic's long-term care facility, the Sam Swope Care Center. Wiley, as agent, signed the admission documents along with an alternative dispute resolution ("ADR") agreement. Blair resided at the facility until May 26, 2020, and subsequently passed away.

Wiley, individually and as administratrix of Blair's estate, filed a complaint against Masonic in Jefferson Circuit Court alleging negligence; wanton, reckless, or grossly negligent conduct; breach of the admission agreement; general violations of Kentucky's long-term care resident's rights statute, KRS[1] 216.515; loss of consortium; and violations of the Kentucky Consumer Protection Act, KRS 367.110 *et seq*. Masonic moved to stay the proceedings and compel arbitration, based upon the ADR agreement signed by Wiley in her capacity as Blair's agent. Wiley responded to the motion by arguing that the wrongful death claim was not subject to arbitration, the POA was invalid, the POA did not grant Wiley the authority to bind Blair to the arbitration agreement, and that the arbitration agreement was unconscionable. The trial court denied the motion, finding that the POA was invalid because it was not signed by two witnesses as required by KRS 457.050. This appeal followed.

---

[1] Kentucky Revised Statutes.

We begin by stating our standard of review in appeals from orders denying motions to compel arbitration:

> [A]n order denying a motion to compel arbitration is immediately appealable. KRS 417.220(1). *See also Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 340 (Ky. App. 2001). The enforcement and effect of an arbitration agreement is governed by the Kentucky Uniform Arbitration Act (KUAA), KRS 417.045 *et seq.*, and the Federal Arbitration Act, (FAA) 9 U.S.C.[2] §§ 1 *et seq.* "Both Acts evince a legislative policy favoring arbitration agreements, or at least shielding them from disfavor." *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 588 (Ky. 2012).
>
> But under both Acts, a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate. *Id.* at 589. That question is controlled by state law rules of contract formation. *Id.* at 590. The FAA does not preempt state law contract principles, including matters concerning the authority of an agent to enter into a contract and which parties may be bound by that contract. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31, 129 S. Ct. 1896, 1902, 173 L. Ed. 2d 832 (2009). Since this matter is entirely an issue of law, our standard of review is *de novo. Conseco*, 47 S.W.3d at 340.

*Genesis Healthcare, LLC v. Stevens*, 544 S.W.3d 645, 649 (Ky. App. 2017).

Masonic argues on appeal that the trial court erred in denying the motion to compel arbitration. Specifically, it argues that (1) the POA was valid because the legislature removed the two-witness requirement in its 2020

---

[2] United States Code.

amendments to KRS 457.050, and those amendments are retroactive; (2) there was a valid arbitration agreement and Wiley was authorized under the POA to enter into ADR; (3) Wiley and the estate should be estopped from contending the POA was invalid; (4) the arbitration agreement was not unconscionable; and (5) the wrongful death claim should be stayed pending arbitration of the other claims.

"[A] party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate." *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 590 (Ky. 2012). Thus, we begin our analysis with the threshold issue on appeal: whether the POA was valid. The trial court found the POA was invalid because it was not signed by two witnesses as required by Kentucky law at the time the POA was executed and that any subsequent amendment to the law did not apply retroactively.

In 2018, Kentucky adopted the Uniform Power of Attorney Act (2006)[3] ("the Act"), representing a significant change to the law on powers of attorney. Relevant to this appeal, the 2018 version of KRS 457.050 provided:

> (1) A power of attorney *must be signed in the presence of two (2) disinterested witnesses* by the principal or in the principal's conscious presence by another individual directed by the principal to sign the principal's name on the power of attorney. If signed in the principal's conscious presence by another individual, the reason for this method of signing shall be stated in the power of attorney.

---

[3] KRS Chapter 457.

> (2) A signature on a power of attorney is presumed to be genuine if the principal acknowledges the signature before a notary public or other individual authorized by law to take acknowledgments.

(Emphasis added.)

In 2020, the General Assembly amended KRS 457.050 to remove the two-witness requirement. Masonic argues the 2020 amendment to KRS 457.050 is retroactive, citing KRS 457.460 and KRS 457.060. "The general rule in Kentucky is that the amended version of a statute [is not] applied retroactively to events which occurred prior to the effective date of the amendment unless the amendment expressly provides for retroactive application." *Martin v. Warrior Coal LLC*, 617 S.W.3d 391, 394 (Ky. 2021) (internal quotation marks and citation omitted). "Retroactive application of statutes will be approved only where we can be certain the General Assembly intended the statute to operate retroactively." *Anderson v. Mountain Comprehensive Health Corporation*, 628 S.W.3d 10, 15 (Ky. 2021) (citation omitted). "But this legislative intent requires no magic words, it need only manifest [the General Assembly's] desire that a statute apply retroactively." *City of Villa Hills v. Kentucky Ret. Sys.*, 628 S.W.3d 94, 104 (Ky. 2021) (internal quotation marks and citation omitted).

"To determine legislative intent, we look first to the language of the statute, giving the words their plain and ordinary meaning." *Richardson v. Louisville/Jefferson County Metro Government*, 260 S.W.3d 777, 779 (Ky. 2008).

"We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes." *Util. Mgmt. Grp., LLC v. Pike Cnty. Fiscal Ct.*, 531 S.W.3d 3, 8 (Ky. 2017) (citation omitted).

Here, KRS 457.060 clearly demonstrates the legislature intended KRS 457.050 to apply retroactively.[4] KRS 457.060 provides in relevant part:

> (1) A power of attorney executed in this state on or after July 14, 2018 is valid if its execution complies with KRS 457.050.

> (2) A power of attorney executed in this state before July 14, 2018 is valid if its execution complied with the law of this state as it existed at the time of execution.

KRS 457.060 was left unchanged by the 2020 amendment. The General Assembly could have updated this section so that the amended KRS 457.050 only applied prospectively, but it did not. "[O]ur rules of statutory interpretation assume the Legislature knows what it is doing and intends the clearly expressed language of the legislation." *Dolt, Thompson, Shepherd & Conway, P.S.C. v. Commonwealth ex rel. Landrum*, 607 S.W.3d 683, 689 (Ky. 2020). The conscious decision to leave KRS 457.060(1) unchanged, coupled with the amendment to KRS 457.050,

---

[4] Because we believe that KRS 457.060 sufficiently demonstrates the General Assembly's intent that KRS 457.050, the relevant provision in this case, apply retroactively, we find it unnecessary to consider the intent and effect of KRS 457.460, the other provision cited by Masonic.

suggests a clear legislative intent for the changes to KRS 457.050 to be retroactive to July 14, 2018.

The POA in this case was executed on April 24, 2019. According to the plain language of KRS 457.060(1), the POA was valid because it was executed after July 14, 2018 and complied with the amended KRS 457.050. Wiley cites the rule that a power of attorney terminates at the death of the principal and argues that since Blair died before the 2020 amendment, there was no POA to retroactively "save." We find this argument meritless. That rule concerns an agent's authority to act pursuant to a POA as clearly indicated by the context of KRS 457.100. The relevant issue in this case is whether the POA was valid at the time Wiley signed the ADR agreement. According to KRS 457.060(1), it was. Therefore, the trial court erred in holding that the POA was invalid as a matter of law.

But that does not end our analysis. It is a general rule that "the judgment of a lower court can be affirmed for any reason supported in the record." *Phelps v. Bluegrass Hosp. Mgmt., LLC*, 630 S.W.3d 623, 630 (Ky. 2021). Despite our holding above, Wiley argues that we should affirm the trial court's denial of the motion to compel arbitration because the POA did not grant her the authority to bind Blair to the arbitration agreement and the POA is unconscionable. These arguments were presented to the trial court, but because it found the POA invalid, it did not address them. Therefore, we consider them below.

As noted above, "a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate." *Ping*, 376 S.W.3d at 590 (citations omitted). "[T]he existence of the agreement depends on state law rules of contract formation." *Id.* (citations omitted). To create a valid and enforceable contract, there must be voluntary and complete assent by parties having the capacity to contract. *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 321 (Ky. 2015), *rev'd in part, vacated in part by Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 137 S. Ct. 1421, 197 L. Ed. 2d 806 (2017). An attorney-in-fact can assent on a principal's behalf, if the authority to do so is conferred by the POA instrument. *Id.* "Whether the principal's assent to the arbitration agreement was obtained is . . . a question of law that depends entirely upon the scope of authority set forth in the written power-of-attorney instrument." *Id.* at 322 (citation omitted).

The POA at issue granted Wiley the authority to act "with full power and authority to do in my name and on my behalf any and all acts which I might do if personally present and acting on my own behalf" and "full and complete authority to act for me and in my stead in all matters." Our Supreme Court has found that such an "extremely broad, universal delegation of authority" encompasses entering into a pre-dispute arbitration agreement. *See Extendicare*, 478 S.W.3d at 327. In *Extendicare*, the Clark POA granted the attorney-in-fact the

-8-

authority "to transact, handle, and dispose of all matters affecting me and/or my estate in any possible way" and "to do and perform for me and in my name all that I might do if present." *Id.* at 318-19. The Court concluded that the "POA's universal grant of authority, while not expressly providing the authority to bind the principal to an arbitration agreement, it implicitly does so."[5] *Id.* at 327.

The POA here contains the same broad language as the Clark POA. Therefore, we find that it implicitly authorized Wiley to enter into the arbitration agreement. But even further, the POA in this case specifically granted Wiley the authority to "*enter into contracts of any kind or description whatsoever*, and to exercise any right, option or election which I may have or acquire under any contract[.]" (Emphasis added.) This express grant of authority – to enter into contracts of any kind – would necessarily include arbitration agreements. In sum, the POA granted Wiley, both expressly and implicitly, the authority to enter into the arbitration agreement with Masonic.

Wiley also argues that we should affirm the trial court's denial of the motion to compel arbitration because the arbitration agreement is unconscionable. She cites a provision in the admission agreement disclaiming liability for damages

---

[5] However, the Court went on to hold that executing an arbitration agreement is a waiver of Constitutional rights that must be "unambiguously expressed." *Id.* at 328. This "clear-statement rule" was rejected by the United States Supreme Court in *Kindred Nursing Centers Limited Partnership v. Clark*, 581 U.S. 246, 256, 137 S. Ct. 1421, 1429, 197 L. Ed. 2d 806 (2017), where it found the Clark POA "sufficiently broad to cover executing an arbitration agreement."

caused by mere negligence. We fail to see how a provision in the admission agreement could make the arbitration agreement, a separate agreement, unconscionable.

Wiley also argues that the agreement lacks sufficient consideration and mutuality. However, our Supreme Court held in *Energy Home, Division of Southern Energy Homes, Inc., v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013), that "an arbitration clause requiring both parties to submit equally to arbitration constitutes adequate consideration." (Citations omitted.) It has also held that "[i]f the requirement of consideration is met, there is no additional requirement of . . . 'mutuality of obligation.'" *Grimes v. GHSW Enterprises, LLC*, 556 S.W.3d 576, 583 (Ky. 2018) (citing RESTATEMENT (SECOND) OF CONTRACTS § 79 (1979)). Therefore, the arbitration agreement does not fail on these grounds. Having found no alternative reason to affirm the trial court, we hold the trial court erred in denying the motion to compel arbitration.

Finally, we address whether the trial court must stay the wrongful death claim pending resolution of the arbitrable claims.[6] While we have found no published Kentucky case law on point, federal authority provides some guidance.[7] The decision to stay litigation pending the outcome of arbitration is "one left to the

---

[6] Both parties agree the wrongful death claim is the only claim not subject to arbitration.

[7] We cite federal case law herein as persuasive, not mandatory, authority.

district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 n.23, 103 S. Ct. 927, 939, 74 L. Ed. 2d 765 (1982) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163, 165-66, 81 L. Ed. 153 (1936)). "In deciding whether non-arbitrable claims should also be stayed, a district court should consider whether [the] arbitrable claims predominate or whether the outcome of the non[-]arbitrable claims will depend upon the arbitrator's decision." *Leafguard of Kentuckiana, Inc. v. Leafguard of Kentucky, LLC*, 138 F. Supp. 3d 846, 859 (E.D. Ky. 2015) (internal quotation marks citation and omitted). Because the trial court found the POA invalid, it did not rule on whether to stay the non-arbitrable claims. On remand, the trial court should consider whether the outcome of the wrongful death claim is dependent upon the arbitrator's decision, and then rule on the issue.

Wherefore, the order of the Jefferson Circuit Court is reversed, and this matter is remanded for the trial court to compel arbitration of the arbitrable claims and determine whether to stay litigation of the wrongful death claim.

CALDWELL, JUDGE, CONCURS.

TAYLOR, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

TAYLOR, JUDGE, DISSENTING: Respectfully, I dissent. I believe the circuit court was correct in concluding that Blair's power of attorney ("POA") was invalid

-11-

as a matter of law upon its execution in April of 2019, by not being signed in the presence of two witnesses.

Effective July 14, 2018, the Kentucky General Assembly enacted the Uniform Power of Attorney Act of 2006 ("UPOAA"), which required POA's after that date to be executed in the presence of two witnesses, which did not occur in this case. KRS 457.050(1). Prior to July 14, 2018, and after July 15, 2020, when the General Assembly amended KRS 457.050(1) to eliminate the two-witness requirement, the execution of a POA in the presence of a notary was sufficient.

The POA in this case clearly does not comply with the two-witness requirement and in my opinion, KRS 457.060(1), does not cure the mandatory two-witness requirement for POA's executed during the two-year period from July 14, 2018, through July 15, 2020. Accordingly, I would affirm the circuit court.

BRIEFS FOR APPELLANT:

Darryl W. Durham
B. Keith Saksefski
Louisville, Kentucky

BRIEF FOR APPELLEES:

Chadwick N. Gardner
John C. Grey, II
Prospect, Kentucky